[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 486.]

COLUMBUS BAR ASSOCIATION *v.* KLOS.

COLUMBUS BAR ASSOCIATION *v.* ZINGARELLI.

[Cite as *Columbus Bar Assn. v. Klos*, 1998-Ohio-610.]

*Attorneys at law—Misconduct—Public reprimand—Employment discrimination cases—Investigative fee applied to a nonrefundable retainer with contingent fee on sums received in excess of the retainer—General ambiguity of fee contracts—Charging a clearly excessive fee, when—DR 2-106(A).*

(Nos. 97-2254 and 97-2255—Submitted January 14, 1998—Decided April 22, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 96-37.

———————————

{¶ 1} Respondent Larry R. Zingarelli of Columbus, Ohio, Attorney Registration No. 0003224, provided free office space to respondent Daniel H. Klos of Columbus, Ohio, Attorney Registration No. 0031294, and Klos's name appeared on Zingarelli's letterhead.

{¶ 2} In April 1994, Klos agreed to represent Lilly Clay in a wrongful termination matter against her former employer. Klos charged Clay $500 for an investigation letter and then, when the letter did not resolve the situation, Klos and Clay entered into a "Fee Agreement." The agreement provided for "a retainer of $4000 and or $150 per hour" (with credit for the previously paid $500) "and or a sum equal to 33 percent of any sum which may be received by a compromise settlement of said claim recovered through prosecution of said claim to judgment in any court." Klos and Clay dispute whether the agreement was fully "filled in" before it was signed by Clay. Clay paid $2,710 of the retainer.

**{¶ 3}** In December 1994, Clay's claim was settled for $15,000. From the proceeds of the settlement, Klos deducted $4,956.66 as fees remaining due him. Klos reached that figure by adding to the balance due on the retainer ($1,290) the sum of $3,666.66 (one third of $11,000, a figure which represented the settlement of $15,000 less the $4,000 retainer). Thus, the total that Klos received as fees was $7,666.66 ($4,000.00 plus $3,666.66), which he shared with Zingarelli. Clay, on the other hand, claimed that under the agreement she owed total fees of only $5,000 (one-third of $15,000). Klos spent 34.54 hours on the Clay matter.

**{¶ 4}** After some correspondence with Clay, Klos offered to reduce the fee by $1,000. When Clay rejected this offer, Klos proposed that the matter be submitted to the Columbus Bar Association Fee Arbitration Program. Clay, instead, filed a grievance with the ethics committee of the relator, Columbus Bar Association.

**{¶ 5}** In January 1994, Jack Lauer engaged Klos to represent him in a wrongful termination matter against his former employer. Klos charged Lauer a fee of $375 for an investigation letter, which he sent to the former employer. That amount was credited to a retainer of $3,000, which was part of an oral agreement for further work. Klos contends that according to the oral agreement, Lauer was to pay a $3,000 retainer plus one-third of any recovery in excess of $3,000. Lauer, who paid $1,550 of the retainer, said that he believed the $3,000 retainer would be credited to the one-third recovery.

**{¶ 6}** In February 1995, Lauer's claims against his employer were settled for $4,500. Klos asserted that his fees were $3,500 (the $3,000 retainer plus one third of $1,500, a figure which represented the settlement of $4,500 less the $3,000 retainer). When Lauer objected to the amount of the fees, Klos, who had spent sixty-seven hours on the Lauer matter, reduced the fee by $950. Klos then shared the proceeds with Zingarelli. Lauer filed a grievance against Klos and Zingarelli with relator's ethics committee.

**{¶ 7}** Based on these facts, relator filed a complaint on March 20, 1996, charging that respondents had violated DR 2-106(A) (charging a clearly excessive fee). Two weeks later, respondent Zingarelli's counsel mailed refunds to Clay and Lauer, representing amounts charged by respondents in excess of the one-third contingency fee: $2,556.56 was mailed to Clay, and $1,050 was mailed to Lauer.

**{¶ 8}** Both respondents filed answers and amended answers to the complaint, and both then filed motions for summary judgment. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") considered the motions with attached exhibits, agreed stipulations, and received the testimony of two expert witnesses.

**{¶ 9}** The panel found that it is customary in the field of employment law for attorneys who take employment discrimination cases to charge an investigative fee to be applied to a nonrefundable retainer and to charge a contingent fee (usually one-third) of any sums received in excess of the retainer. Nevertheless, the panel concluded that the terms of the agreements used by respondents violated the Disciplinary Rule as charged. Such agreements, said the panel, "fly in the face of *Fox and Associates Co., LPA v. Purdon* (1989), 44 Ohio St.3d 69 [541 N.E.2d 448], and *Reid, Johnson [Downes, Andrachik & Webster] v. Lansberry* (1994), 68 Ohio St.3d 570 [629 N.E.2d 431], for the reason that the attorneys, by the express terms of this contract, are attempting to collect a percentage of a rejected settlement offer as attorneys fees." The panel further found that the contracts contain "terms which essentially switch from a contingent fee to an hourly charge should the lawyer be discharged." The panel said that this type of contract was found to violate "DR 2-106(A) in *Cincinnati Bar Association v. Schultz* (1994), 71 Ohio St.3d 383, 643 N.E.2d 1139." The panel recommended that the respondents be publicly reprimanded. The board adopted the findings, conclusions, and recommendation of the panel.

———————————

*Bruce A. Campbell*, *Shawnell E. Williams* and *Kathaleen B. Schulte,* for relator.

*Robert J. Zambiasi,* for respondent Daniel H. Klos.

*William J. O'Malley*, for respondent Larry R. Zingarelli.

_____

***Per Curiam.***

{¶ 10} Based on the facts presented to the panel and the board we find that Klos's written contract to represent Clay was ambiguous and failed to conform with guidelines we have previously promulgated. The respondents ask us to recognize that attorneys who practice employment discrimination law customarily use retainer contracts to cover the investigatory phases of their cases and contingent fee contracts to cover the litigation phases.

{¶ 11} Even assuming the appropriateness of such bifurcated contracts, the fee agreement used by Klos in the Clay matter was deficient. The portion of the contract covering the investigative phase of the case involved a retainer that was nonrefundable should the attorney withdraw for any reason. It further provided that if the attorney withdrew because of acts of the client, the attorney would be entitled to compensation at $150 per hour. The actual wording was, "[I]f the Attorney withdraws * * * without the fault or against the desire of the Client, * * * there shall be nothing due * * * to the Attorney for attorney's fees other than the retainer, court costs, and expenses * * *. If the withdrawal of the Attorney shall be due to the acts or conduct of the Client * * *, the attorney shall be reimbursed for services at an hourly rate of $150.00."

{¶ 12} This one-sided contract gave the attorney carte blanche to terminate at will and keep the retainer. Moreover, it contained no provisions relating to compensation should the attorney be discharged by the client.

{¶ 13} In *Cincinnati Bar Assn. v. Schultz* (1994), 71 Ohio St.3d 383, 643 N.E.2d 1139, we were critical of "earned upon receipt" fees. In some situations, a

non-refundable retainer might be justified, for example when an attorney is engaged to remain available and to forgo other potential employment, particularly for a competitor of his or her client. Generally, however, a client should have the freedom to discharge an attorney at any time subject to the obligation to compensate the attorney only for the services rendered and related expenses. The attorney should not receive a windfall if he or she withdraws or is discharged by the client. In a case such as this, an attorney might ask for a security retainer, and hold the funds received under a possessory security interest to provide security for the fees that he or she might eventually earn, with the commitment to return the unearned portion of the retainer.

{¶ 14} The contingent fee portion of the contract covering the litigation phase of the Clay case was also flawed. It provided that should the attorneys be discharged or withdraw prior to settlement, they would be compensated at $150 per hour. In *Fox & Assoc. Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 541 N.E.2d 448, and in *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry* (1994), 68 Ohio St.3d 570, 629 N.E.2d 431, we disapproved of similar agreements because a liquidated hourly fee arrangement upon termination of a contingent fee contract precluded the application of DR 2-106(B), which sets out the elements to be considered in the calculation of a reasonable fee. We disapprove also of this portion of the Clay contract.

{¶ 15} Finally, the contract language provided for a $4,000 retainer, "and or" $150 per hour, "and or" a contingent fee equal to thirty-three percent of any settlement or judgment. This language is ambiguous. It is impossible to determine from the four corners of this document whether one, two, or all three methods of fee determination apply. In practice, Klos did not apply any of these methods. He applied the fee agreement to the Clay case by charging Clay the retainer and then to that sum adding one-third of the recovery after the recovery was reduced by the

retainer. This method of application of the fee agreement was not clearly expressed at the outset of the representation and is certainly not apparent in the document.

{¶ 16} In the Lauer matter, Klos entered into an oral contract that apparently was similar to the Clay contract, and he shared the resulting fees with Zingarelli. Klos did not enter into a written contract with Lauer. EC 2-18 reads in part, "As soon as feasible after a lawyer has been employed, it is desirable that he reach a clear agreement with his client as to the basis of the fee charges to be made. * * * It is usually beneficial to reduce to writing the understanding of the parties regarding the fee, particularly when it is contingent." Analogously, we note that R.C. 4705.15(B) provides that contingent fee agreements for tort actions must be in writing. Klos's oral contract with Lauer, as we are able to understand it, suffered from the same deficiencies as Klos's variation of the written contract he used with Clay.

{¶ 17} We conclude that the general ambiguity of these contracts, the provision in the investigatory part of the contracts for nonrefundable retainers, so written to provide a windfall should the attorney at his discretion withdraw from the case, and the liquidated hourly rate in the contingent fee parts of the contracts that precluded the determination of a reasonable fee, constitute agreements for a clearly excessive fee, as proscribed by DR 2-106(A).

{¶ 18} We recognize that respondents attempted to resolve the Clay matter by submitting it for arbitration to relator's fee-arbitration program and, later, they refunded amounts to each client taken in excess of the one-third contingent fees. Based on these mitigating factors, respondents are hereby publicly reprimanded. Costs are taxed to respondents jointly and severally.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————