COLUMBUS BAR ASSOCIATION *v.* HALLIBURTON-COHEN.

[Cite as *Columbus Bar Assn. v. Halliburton–Cohen,*
106 Ohio St.3d 98, 2005-Ohio-3956.]

(No. 2004–1808—Submitted March 2, 2005—Decided August 17, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Kim M. Halliburton–Cohen of Columbus, Ohio, Attorney Registration No. 0023389, was admitted to the practice of law in Ohio in 1982. On January 30, 2002, we suspended respondent's license to practice for one year for professional misconduct, including failure to timely account for and return client funds, but we stayed the suspension on conditions. See *Columbus Bar Assn. v. Halliburton–Cohen,* 94 Ohio St.3d 217, 2002-Ohio-640, 761 N.E.2d 1040. As one condition of the stay, respondent was placed on a monitored probation.

{¶ 2} On December 16, 2003, relator, Columbus Bar Association, charged respondent with additional violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of misconduct and a recommendation, which the board adopted.

Misconduct

{¶ 3} The parties stipulated and the board found that respondent had violated DR 2–106(A) (prohibiting a lawyer from charging a clearly excessive fee) by charging a "lost opportunity" fee to a client attempting to terminate her marriage. The client, Ruth Guldmann, had retained respondent in October 2002 and, under a fee contract, had agreed to pay $1,500 of the retainer directly to respondent for this purpose. Respondent charged the lost-opportunity fee after showing the contract to her monitoring lawyer, who, according to respondent, made no comment.

{¶ 4} Respondent's letter of engagement provided:

{¶ 5} "As we discussed, my services are billed on an hourly basis with time being charged in tenths of an hour, or six minute blocks. My hourly rate is $250.00 an hour. The initial retainer for the matter described above is Three Thousand Five Hundred ($3,500.00). Upon retention, a fee of One Hundred

Dollars ($100.00) is assessed to the client for the opening of a file, and One Thousand Five Hundred Dollars ($1500.00) is assessed to the client for the lost opportunity cost to the attorney for her immediate and permanent inability to represent any other party in the case. The remaining funds will be deposited in the attorney's trust account and will be billed against at the hourly rate described for services rendered."

{¶ 6} The board found that once Guldmann had consulted respondent, respondent was ethically foreclosed from any other representation in the case because of the parties' adverse interests and the fact that Guldmann's husband had his own lawyer. Respondent thus had no employment opportunity to lose by agreeing to represent her client.

{¶ 7} On October 29, 2002, Guldmann paid respondent $3,625, which represented the $3,500 retainer and $125 for an initial consultation, and respondent deposited this sum in her trust account. On October 31 and November 4, 2002, respondent wrote two checks to herself totaling $1,500 from the trust account, identifying these amounts as earned fees. Respondent testified before the panel that although she had not actually reviewed her time records or billed her client, she believed that she had performed $1,500 of work and was justified in paying herself this money.

{¶ 8} Later in November 2002, respondent and Guldmann agreed that Guldmann should retain new counsel. Guldmann also asked respondent either to refund the amounts paid under their fee contract or to participate in relator's fee-arbitration program. Respondent agreed to the fee arbitration; however, Guldmann moved out of the country without arbitrating the dispute.

{¶ 9} Guldmann filed her grievance against respondent on November 9, 2002. Respondent did not receive notice of the grievance until December 17, 2002. Around November 15, 2002, respondent delivered to her client a check for $1,900 as a refund of her retainer. The $1,900 check represented the $3,625 initial fee, less $125 for the initial consultation, $100 for opening the file, and the $1,500 that respondent had already paid herself.

{¶ 10} In late December 2002, respondent produced an invoice for Guldmann showing charges of $1,327.30 for her services. Thus, based on respondent's own accounting, her client was still due $172.70. Respondent has offered to repay this amount.

{¶ 11} In addition to the stipulated misconduct, the board also found respondent in violation of DR 2–110(A)(3) (requiring a lawyer who withdraws from employment to promptly refund unearned fees). Although respondent claimed that she had earned the $1,500 she took in fees, the board was skeptical. The board, adopting the panel's findings, noted that respondent had not actually accounted for her billable hours at the time of payment, she did not produce

records of her charges for more than a month afterward, and her records did not show that she had earned her entire fee. The board also noted that respondent has yet to repay the $172.70 she had overcharged.

### Sanction

{¶ 12} In recommending a sanction for this misconduct, the board reviewed the aggravating and mitigating features of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). In aggravation, the board found that respondent had a prior record of discipline for her failure to return unearned fees, BCGD Proc.Reg. 10(B)(1)(a), although the board also acknowledged a favorable final report of her monitored probation.[1] The board found no other aggravating factors.

{¶ 13} In mitigation, the board found that respondent had been forthcoming and cooperative during the disciplinary proceedings, and the parties had stipulated to her good character apart from the events at bar. BCGD Proc.Reg. 10(B)(2)(d) and (e). Respondent has also stopped charging a lost-opportunity fee, and although the board found no violation of DR 1–104's notice requirement in the portion of her letter of engagement concerning her lack of professional liability insurance, respondent has changed her standard letter of engagement in an attempt to highlight that notice.

{¶ 14} Although the parties agreed that the appropriate sanction is a public reprimand, the panel recommended a six-month suspension, stayed on conditions. Among the conditions were the requirements that respondent refund $172.70 to her former client, commit no further misconduct, and pay all costs of this proceeding. The board adopted the panel's recommendation.

{¶ 15} Upon review, we agree that respondent violated DR 2–106(A) as found by the board. Relator's counsel argued that respondent's lost-opportunity fee resembled the nonrefundable retainers that we have criticized in the past. See *Columbus Bar Assn. v. Klos* (1998), 81 Ohio St.3d 486, 692 N.E.2d 565, and *Cincinnati Bar Assn. v. Schultz* (1994), 71 Ohio St.3d 383, 643 N.E.2d 1139. Respondent did not accept this fee in combination with a contingent fee, as was done in *Klos* and *Schultz*; however, she did consider it earned upon receipt and not as security for fees or an advance on expenses. We have found that such retainers are appropriate "only in very limited circumstances, such as an engagement to remain available and forgo employment by a competitor of the client." *Cuyahoga Cty. Bar Assn v. Okocha* (1998), 83 Ohio St.3d 3, 6, 697 N.E.2d 594.

---

1. This report was never filed with this court, and respondent's probation was never terminated. See Gov.Bar R. V(9)(D).

{¶ 16} Here, as the board found, respondent had no employment opportunity to lose. There was no agreement for respondent to remain available in case Guldmann needed to retain her services again. And after she was retained, respondent was ethically bound to represent her client's interests as against the spouse's interests, see, generally, DR 7–101(A), and to charge for her legal services only in accordance with DR 2–106(B). *Dayton Bar Assn. v. Schram,* 98 Ohio St.3d 512, 2003-Ohio-2063, 787 N.E.2d 1184; *Klos,* 81 Ohio St.3d 486, 692 N.E.2d 565. Thus, as respondent now concedes, her lost-opportunity fee had no relation to any legal services she might have performed or been precluded from performing and, therefore, constituted an excessive fee.

{¶ 17} We also find that respondent violated DR 2–110(A)(3), and, accordingly, we overrule respondent's objection to this determination. Evidence established that although respondent must have known by the end of December 2002 that she still owed her client $172.70, she never contacted the client, for whom she had a recent e-mail address, to find out where to send the money. Moreover, when asked why she failed to return this fee at the hearing, respondent had no credible explanation for her inaction. The board thus justifiably found the challenged misconduct.

{¶ 18} For these reasons, respondent is suspended from the practice of law in Ohio for six months; however, this suspension is stayed on the conditions that she refund $172.70 to her former client within 30 days of our order and commit no further misconduct during the stayed suspension period. If respondent fails to comply with these conditions, the stay will be lifted, and she will serve the entire six-month suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Lance Tibbles, Stanley D. Ross, and Bruce Campbell, Bar Counsel, and Jill M. Snitcher McQuain, Assistant Bar Counsel, for relator.

Anthony M. Heald, for respondent.