[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Purola*, Slip Opinion No. 2023-Ohio-1768.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1768

DISCIPLINARY COUNSEL *v.* PUROLA.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Purola*, Slip Opinion No. 2023-Ohio-1768.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Six-month suspension.*

(No. 2022-0350—Submitted February 7, 2023—Decided May 31, 2023.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-003.

_____

**Per Curiam.**

{¶ 1} Respondent, Albert Linden Purola, last known attorney-registration address in Willoughby, Ohio, Attorney Registration No. 0010275, was admitted to the practice of law in Ohio in 1970.

{¶ 2} On March 1, 2022, relator, disciplinary counsel, filed a complaint with the Board of Professional Conduct alleging that Purola had charged a client

excessive fees and had misused his client trust account. Purola failed to answer the complaint, and on May 4, 2022, we imposed an interim default suspension pursuant to Gov.Bar R. V(14)(B)(1). 168 Ohio St.3d 1247, 2022-Ohio-1476, 200 N.E.3d 1173. On July 13, 2022, we found him in contempt because he had not timely complied with our default-suspension order. 167 Ohio St.3d 1454, 2022-Ohio-2402, 190 N.E.3d 630.

{¶ 3} On August 4, 2022, we issued an order to show cause directing Purola to explain why his interim default suspension should not be converted into an indefinite suspension. Purola filed objections, and on September 8, 2022, we remanded the matter to the board for consideration of mitigation evidence only. 167 Ohio St.3d 1506, 2022-Ohio-3128, 194 N.E.3d 370. Because of Purola's default and failure to timely move this court for leave to answer the charges against him, he is deemed to have committed the charged ethical violations. *See* Gov.Bar R. V(14)(A) and (C); *Disciplinary Counsel v. Tinch*, 160 Ohio St.3d 165, 2020-Ohio-2991, 154 N.E.3d 78, ¶ 4.

{¶ 4} On remand, the board's director appointed a three-member panel to hear the mitigation evidence, and the panel chair held a prehearing telephone conference with the parties. Because Purola currently resides in an assisted-living community in Florida, the panel hearing was scheduled for video teleconferencing to facilitate his participation. Purola, however, failed to appear for the November 7, 2022 panel hearing.

{¶ 5} The board issued a report recommending that we suspend Purola's license for six months and condition his reinstatement on his reimbursing the Lawyers' Fund for Client Protection for the amount awarded against him. Neither party has objected to the board's report. Based on our review of the record, we adopt the board's report and recommended sanction.

**Misconduct**

*The Dykes matters*

{¶ 6} On October 1, 2020, Ronnie Dykes was charged with felonious assault and other offenses in the Lake County Court of Common Pleas (hereinafter, the "assault case"). On October 8, he was charged in a separate case with drug possession and trafficking (hereinafter, the "drug case").

{¶ 7} About a week later, Purola agreed to represent Dykes in the assault case—including trial, if necessary—for a flat fee of $10,000. Lakeisha Jackson, Dykes's friend, paid the fee in cash. The day after receiving the cash, Purola deposited only $7,950 into his client trust account, despite not yet having completed any work in the case.

{¶ 8} Purola also agreed to represent Dykes in the drug case but only for the purpose of filing a motion to suppress. On or about October 29, Jackson paid Purola $2,000 in cash, and later that day, Purola deposited $1,700 of the fee into his client trust account. Jackson paid Purola an additional $500 in cash about a week later; Purola did not deposit any of those funds into his client trust account. Nor did he give Jackson receipts for any of her payments to him.

{¶ 9} On December 18, 2020, Jackson sent Purola a text message stating that he had "done nothing" for Dykes and discharging him from representing Dykes in the assault and drug cases. She also requested a refund. Purola refused to refund any of the advanced legal fees, replying, "Since your unilateral decision to prevent me from performing my part of the agreement you are entitled to no refund and will get none from me. The Supreme Court [h]as established a program for fee disputes and that would be your remedy." After confirming with Dykes that he had been terminated, Purola moved to withdraw from Dykes's cases, and the court appointed new counsel.

{¶ 10} Purola did not document the tasks he performed for Dykes or the time he had spent on Dykes's matters. Court records showed that on October 23,

2020, Purola filed a notice of appearance in the assault case and a three-paragraph motion to reinstate Dykes's bond, even though the court had already denied a motion to reinstate bond filed by Dykes's former counsel a few weeks earlier. Purola appeared for a November 9 hearing on his motion to reinstate bond, which the court denied less than an hour later. During the hearing, Purola stated that he had not yet accessed the prosecutor's online-discovery portal, even though Dykes's former counsel had forwarded him the link to the portal. In the drug case, Purola filed a notice of appearance on November 10.

{¶ 11} On November 17, Purola filed a motion for a continuance in both cases, asserting that he had not yet had sufficient time to prepare a proper defense and that discovery had not been completed. Two days later, the court granted the motion and scheduled a trial in the assault case for January 25, 2021. On the same day, an assistant prosecutor emailed Purola a plea offer for both cases. At that point, Purola downloaded the discovery that the prosecution had provided through the discovery portal. On December 11, 2020, Purola sent the assistant prosecutor a letter stating that the assault case should be dismissed, and on December 18, he filed a five-paragraph motion to unseal grand-jury testimony. But on the same date, Jackson sent Purola the text message discharging him from the representation.

{¶ 12} In the 65 days that Purola represented Dykes, he met with Dykes six times at the county jail for a total of approximately five hours. Although Dykes had advised Purola that he wanted the assault case dismissed or to be heard by a jury and Purola had agreed to represent Dykes through trial, he never interviewed witnesses, requested additional discovery, or engaged in any investigative activities. In the drug case, Purola never filed the motion to suppress, which was the purpose of the limited representation.

{¶ 13} Relator's complaint alleged that Purola's receipt of $12,500 in legal fees was clearly excessive based on the minimal work that he had performed. And

4

although he was fully paid in advance and was discharged before completing his representation, he refused to refund any portion of the fees he had received.

{¶ 14} As alleged in relator's complaint, Purola's conduct is deemed to have violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), and 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment).

*Client-trust-account violations*

{¶ 15} On October 1, 2020, the balance in Purola's client trust account was $13.13.  As noted above, later in October 2020, he deposited into his client trust account $9,650 of the $12,500 cash that Jackson had paid him.  On November 2, he deposited into the trust account a settlement check for $1,043.65 that related to an accident involving his vehicle; the funds did not relate to any client matter.

{¶ 16} Between October 21 and December 2, 2020, Purola withdrew funds from his client trust account on 28 occasions.  Three withdrawals were to pay personal expenses.  He ultimately withdrew the entire amount received from Jackson that he had deposited.  Therefore, considering that he kept $2,850 in cash that he had initially received from her, by December 2, he had essentially paid himself the full $12,500 fee for Dykes's cases, even though he was only 49 days into the representation.  Purola also failed to maintain a client ledger for the Dykes matters, and during the representation, he failed to maintain a general ledger for or perform and retain a monthly reconciliation of his client trust account.

{¶ 17} In addition, in November and December 2020, Purola's housekeeper stole five of his client-trust-account checks, forged his name on those checks, and withdrew $830 from the account.  One of those checks caused an overdraft.  Purola

did not report the forged checks to law enforcement or seek repayment from his housekeeper.

{¶ 18} On January 11, 2021, Purola transferred money into his client trust account to make the balance current and then closed the account. Even before we imposed his interim default suspension, Purola had registered as an attorney on inactive status. Therefore, he no longer maintains a client trust account.

{¶ 19} As alleged in relator's complaint, Purola's conduct is deemed to have violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds belonging to a client in a client trust account, separately from the lawyer's own property), 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held); 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the name of the account, the date, the amount, and client affected by each credit and debit, and the balance in the account), and 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account).

*Failure to report funds*

{¶ 20} Relator's complaint also alleged that Purola failed to report the $12,500 in cash that he received from Jackson to the Internal Revenue Service, as required by federal law. Relator alleged that this conduct violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). Pursuant to his default and failure to timely move this court for leave to answer the pending complaint, he is deemed to have committed this violation.

**Sanction**

{¶ 21} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 22}** As for aggravating factors, the board found that Purola had had a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, failed to cooperate in the disciplinary process, refused to acknowledge the wrongful nature of his conduct, harmed a vulnerable client, and failed to make any restitution. *See* Gov.Bar R. V(13)(2) through (5), (7), (8), and (9). Because Purola did not attend the panel hearing or offer any mitigating evidence, the board found no mitigating factors.

**{¶ 23}** The board cited three cases with facts and rule violations that it found were similar to those here. In *Disciplinary Counsel v. Summers*, 131 Ohio St.3d 467, 2012-Ohio-1144, 967 N.E.2d 183, an attorney had charged a $15,000 flat fee for a criminal case but failed to see the case through to trial, as he had promised he would. We found that the attorney had collected a clearly excessive fee, failed to promptly refund his unearned fee after withdrawing from the representation, and engaged in conduct that adversely reflected on his fitness to practice law. Numerous aggravating factors were present, including that the attorney had a dishonest or selfish motive, cooperated only grudgingly in the disciplinary process, lied in his testimony during the panel hearing, refused to acknowledge the wrongful nature of his conduct, harmed vulnerable clients, and failed to make restitution. As for mitigation, the attorney had no prior discipline and submitted evidence of his good character and reputation. We suspended him from the practice of law for six months and conditioned his reinstatement on his making restitution. *See id.* at ¶ 46, 49.

**{¶ 24}** In *Columbus Bar Assn. v. Halliburton-Cohen*, 106 Ohio St.3d 98, 2005-Ohio-3956, 832 N.E.2d 42, an attorney charged a client a clearly excessive fee and failed to promptly refund unearned fees upon withdrawing from the representation. We found only one aggravating factor: prior discipline for similar misconduct. As for mitigation, the attorney cooperated in the disciplinary process and the parties stipulated to the attorney's otherwise good character. We suspended

her for six months but stayed the suspension on conditions, including that she refund money to her former client.

**{¶ 25}** And in *Cleveland Metro. Bar Assn. v. Sliwinski*, 134 Ohio St.3d 368, 2012-Ohio-5640, 982 N.E.2d 698, an attorney committed some of the same client-trust-account violations as Purola. For example, the attorney used his client trust account to pay personal expenses, failed to keep records for his client trust account or to perform monthly reconciliation of the funds in the account, and failed to promptly refund an unearned fee. We found only one aggravating factor—that he had engaged in a pattern of misconduct—but several mitigating factors, including that the lawyer had a clean disciplinary record, had cooperated in the disciplinary process, and had lacked a dishonest or selfish motive. We suspended him for six months but stayed the suspension on conditions, including that he make restitution. *Id.* at ¶ 33.

**{¶ 26}** The board found that the aggravating factors present here are similar to those in *Summers*. The board recognized that Purola's advanced age, his inactive registration status, and his current living situation are relevant in assessing the risk he poses to the public. But considering the number of significant aggravating factors, the board concluded that an actual six-month suspension was warranted and consistent with the sanction we imposed in *Summers*.

**{¶ 27}** In addition, the board recommends that we condition Purola's reinstatement to the practice of law on his reimbursing the Lawyers' Fund for Client Protection ("LFCP") in the amount of any award paid to Dykes and Jackson. As the board noted, Dykes and Jackson filed a claim with the LFCP alleging a loss of $12,500 due to Purola's dishonest conduct. The LFCP has determined that they suffered a loss of $7,500 and are eligible for reimbursement in that amount.

**{¶ 28}** Having independently reviewed the record and our applicable precedent, we agree that a six-month suspension, with reinstatement conditioned on reimbursement to the LFCP, is the appropriate sanction in this case.

**Conclusion**

{¶ 29} Albert Linden Purola will be suspended from the practice of law in the state of Ohio for six months; upon Purola's registration for active status, his interim default suspension will be converted into a six-month suspension. In addition to meeting the requirements of Gov.Bar R. V(24), Purola's reinstatement shall be conditioned on his providing proof that he has reimbursed the Lawyers' Fund for Client Protection in the amount awarded to Ronnie Dykes and Lakeisha Jackson. Costs are taxed to Purola.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Michelle A. Hall and Matthew A. Kanai, Assistant Disciplinary Counsel, for relator.

Albert Linden Purola, pro se.

_____