**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Skolnick,* **Slip Opinion No. 2018-Ohio-2990.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2990

DISCIPLINARY COUNSEL *v.* SKOLNICK.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Skolnick,* Slip Opinion No. 2018-Ohio-2990.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—One-year license suspension with six months of the suspension stayed on condition.*

(No. 2017-1735—Submitted January 24, 2018—Decided August 1, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-027.

_____

**Per Curiam.**

{¶ 1} Respondent, Howard Evan Skolnick, of Cleveland, Ohio, Attorney Registration No. 0061905, was admitted to the practice of law in Ohio in 1993.

{¶ 2} In a formal complaint filed with the Board of Professional Conduct on May 22, 2017, relator, disciplinary counsel, charged Skolnick with a single

violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) for verbally harassing his paralegal for more than two years. Based on the parties' stipulations and Skolnick's hearing testimony, the board found that Skolnick had engaged in the charged misconduct and recommended that he be suspended from the practice of law for six months, with the entire suspension stayed on the condition that he engage in no further misconduct. No objections have been filed.

{¶ 3} Having review the record, we adopt the board's findings of fact and misconduct. Given the longstanding and pervasive nature of Skolnick's degrading verbal attacks against his paralegal, however, we find that a one-year suspension, with six months stayed on the condition that he engage in no further misconduct, is the appropriate sanction for that misconduct.

## Misconduct

{¶ 4} Almost immediately after L.D. began working as a paralegal at Skolnick's law firm in August 2011, Skolnick began criticizing and verbally harassing her. He hurled insults and called her stupid, dumb, fat, "whorey," and bitch. Skolnick also called L.D.'s husband a "douche bag" and made fun of her mother, though he had never met her. Uncomfortable with Skolnik's behavior, L.D. soon began looking for a new job. As she could not afford to leave the firm until she had secured new employment, she responded to over 100 employment advertisements, but her job search was unsuccessful.

{¶ 5} Skolnick's verbal insults and harassment continued throughout L.D.'s nearly two-and-a-half-year tenure with the firm. At some point, L.D. began recording those interactions. These recordings reveal that on one occasion, Skolnick told L.D. that he would put her next to his office so that he could "watch every move that [her] despicable ass makes." During that conversation, he also told her that he had been losing weight because seeing her made him nauseous. Another time, L.D. left a meeting upset and humiliated because Skolnick had used foul

language in front of attorneys to criticize her level of education. And in the spring of 2012, Skolnick sexually harassed L.D. While Skolnick drove L.D. and another female employee to lunch, he remarked that the two women should give him "road head" so that he could rate their performances on a scale from one to ten. Skolnick also falsely told an African American client that L.D. did not like black people, a remark that upset L.D. and forced her to defend herself in front of the client.

**{¶ 6}** As a result of Skolnick's harassment, L.D. suffered from anxiety, sleep disturbances, depression, and poor body image. Those symptoms persisted even after she left the firm to take a new job in January 2014. A clinical psychologist who evaluated L.D. the following October reported that her symptoms meet some of the criteria for a diagnosis of posttraumatic stress disorder.

**{¶ 7}** Skolnick stipulated and the board found that his conduct adversely reflected upon his fitness to practice law in violation of Prof.Cond.R. 8.4(h). We accept these findings of fact and agree that Skolnick's pervasive pattern of verbally harassing and abusing his paralegal falls within this catchall provision. *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E2d 500, ¶ 21.

### Sanction

**{¶ 8}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 9}** The parties stipulated and the board found two aggravating factors: Skolnick engaged in a pattern of misconduct and caused harm to a vulnerable employee. *See* Gov.Bar R. V(13)(B)(3), (8). As mitigating factors, the board found that Skolnick did not have a prior disciplinary record, presented evidence of his good character, cooperated in the disciplinary process, acknowledged his misconduct, and expressed remorse for his behavior. *See* Gov.Bar R. V(13)(C)(1),

(4), (5). Although Skolnick presented some evidence that he had been diagnosed with and was being treated for cyclothymic disorder and exhibited traits of obsessive-compulsive personality disorder, the board declined to afford mitigating effect to those conditions because Skolnick did not present any evidence that they were causally related to his misconduct as required by Gov.Bar R. V(13)(C)(7).[1]

{¶ 10} Skolnick testified that after receiving a letter from L.D.'s counsel accusing him of sexual harassment, discrimination, and creating a hostile work environment, he agreed to mediate those claims. He never denied L.D.'s allegations and quickly settled her claims for $300,000—the limits of his insurance coverage—to avoid causing her any additional trauma. Skolnick also testified that he hired a human-resource specialist to revise the firm's employee handbook and to provide sexual-harassment training to himself and his staff. He delegated some of his management duties to other attorneys in the firm, reduced his office hours, and started performing some of his work remotely. It is not clear, however, that the board attributed any mitigating effect to these facts.

{¶ 11} Based on Skolnick's verbal and sexual harassment and the harm it caused to L.D., the board recommends that we suspend him from the practice of law for six months, with the entire suspension stayed on the condition that he commit no further misconduct. In support of that sanction, the board considered two cases in which we imposed fully or partially stayed suspensions on attorneys who had engaged in inappropriate communications with staff. In *Columbus Bar Assn. v. Baker*, 72 Ohio St.3d 21, 647 N.E.2d 152 (1995), we suspended an attorney for six months, with the entire suspension stayed on conditions, for using inappropriate, vulgar, sexually explicit, and sexually suggestive language in the

---

[1] Gov.Bar R. V(13)(C)(7) provides that a mental-health disorder qualifies as a mitigating factor when all the following factors exist: a diagnosis of a disorder by a qualified healthcare professional, a determination that the disorder contributed to the respondent's misconduct, a sustained period of successful treatment, and a prognosis from a qualified healthcare professional that the attorney will be able to return to the competent, ethical practice of law under specified conditions.

presence of a 17-year-old student who worked in his office. And in *Lake Cty. Bar Assn. v. Mismas*, 139 Ohio St.3d 346, 2014-Ohio-2483, 11 N.E.3d 346, we imposed a one-year license suspension, with six months of it conditionally stayed, on an attorney who had sent inappropriate text messages to a student law clerk in which he suggested that she perform sexual favors for him, indicated that her employment was conditioned on her compliance with his demands, and repeatedly insisted that he was not joking. The board also noted that in *Akron Bar Assn. v. Miller*, 130 Ohio St.3d 1, 2011-Ohio-4412, 955 N.E.2d 359, we imposed a fully stayed six-month suspension on an attorney who had made inappropriate and unprofessional statements of a sexual nature to a client in a single telephone call.

{¶ 12} Unlike in *Baker*, *Mismas*, and *Miller*, the target of the attorney's inappropriate communications was not a young student or a client. But he directed frequent profanity-laced verbal tirades toward and sexually harassed a vulnerable employee who needed her job to support her family. During L.D.'s two-and a-half-year tenure, Skolnick berated her for her physical appearance, dress, education, and parenting skills. He called her a bitch, a "hoe", a dirtbag, and a piece of shit, and he told her that he hoped she would die. And because L.D. recorded her interactions with Skolnick on more than 30 occasions, we have had the opportunity to hear Skolnick's outbursts for ourselves.

{¶ 13} The only explanation that Skolnick offered for his extreme, obnoxious, and humiliating attacks on L.D. was that he had learned the lingo from rappers and hip-hop artists while practicing entertainment law and that he believed he was using the phrases in more of a humorous than a harmful way.

{¶ 14} In light of the longstanding and pervasive nature of Skolnick's degrading verbal attacks against his paralegal, we believe that a sanction greater than the stayed six-month suspension recommended by the board is necessary not only to protect the public and the dignity of the legal system but also to deter future

misconduct of this nature by Skolnick and other attorneys licensed to practice law in this state.

{¶ 15} Accordingly, Howard Evan Skolnick is suspended from the practice of law in Ohio for one year, with the final six months of the suspension stayed on the condition that he engage in no further misconduct. If Skolnick fails to comply with the condition of the stay, the stay will be lifted, and he will serve the full one-year suspension. Costs are taxed to Skolnick.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FISCHER, and DEWINE, JJ., concur.

FRENCH, J., dissents.

DEGENARO, J., not participating.

———————————

Scott J. Drexel, Disciplinary Counsel, and Catherine M. Russo, Assistant Disciplinary Counsel, for relator.

Coughlan Law Firm L.L.C. and Jonathan E. Coughlan, for respondent.

———————————