## DISCIPLINARY COUNSEL *v.* ENGLER.

### [Cite as *Disciplinary Counsel v. Engler,* 110 Ohio St.3d 138, 2006-Ohio-3824.]

(No. 2006–0392—Submitted March 29, 2006—Decided August 9, 2006.)

---

**Per Curiam.**

{¶ 1} Respondent, David Lee Engler of Boardman, Ohio, Attorney Registration No. 0030264, was admitted to the practice of law in Ohio in 1985.

{¶ 2} On October 10, 2005, relator, Disciplinary Counsel, charged respondent with violating the Code of Professional Responsibility by engaging in a sexual relationship with a client. A panel of the Board of Commissioners on Grievances

and Discipline heard the cause on the parties' consent-to-discipline agreement, filed pursuant to Section 11 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The panel accepted the parties' agreement and made corresponding findings of misconduct and a recommendation, which the board adopted.

## Misconduct

{¶ 3} The parties stipulated that respondent had two sexual encounters with a divorce client and had thereby violated DR 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law) and 5–101(A)(1) (prohibiting a lawyer from accepting employment if the exercise of professional judgment on behalf of a client will be or reasonably may be affected by the lawyer's personal interests). The parties also agreed that respondent's misconduct warranted a public reprimand.

{¶ 4} Respondent has a law practice under the name of Engler & Associates. On June 29, 2004, a 28–year–old female client consulted respondent about ending her marriage. During their discussions, respondent learned that the client was an artist and had sold some of her paintings. He indicated an interest in possibly purchasing her work, and sometime later, the client brought paintings to respondent's office. Respondent offered to buy some of the paintings by crediting the client for $400 toward his $1,000 fee. The client agreed to trade the paintings and paid the balance of respondent's $600 legal fee.

{¶ 5} The client expected her husband to agree to dissolve their marriage, and in late August 2004, respondent sent a separation agreement to the husband for review. On September 8, 2004, respondent met his client at a restaurant to discuss the dissolution process. Afterward, respondent and the client went to his house and engaged in consensual sexual relations.

{¶ 6} Approximately seven to ten days later, the client visited respondent at home again, and the couple again had consensual sex. Respondent subsequently told his client that he could not continue to have a personal relationship with her until her case had ended and she was no longer his client. About the same time, respondent wrote a memo to the client's file indicating he had told the client he could not have a personal relationship with her and that the client had agreed.

{¶ 7} In late September 2004, an attorney representing the husband sent respondent proposed changes to the dissolution agreement. Early in October 2004, respondent met with his client in the presence of his assistant to review the changes and then wrote to the other lawyer regarding those changes.

{¶ 8} In a telephone conversation on October 12, 2004, respondent again told his client that he could not continue their personal relationship while he was

representing her. The next day, the client sent a letter of dismissal to respondent. Respondent promptly replied with a letter indicating that he had completed his work in her case. Respondent enclosed a final invoice and a check reimbursing the client for the remaining balance of her paid fees. Later, respondent also returned the paintings that he had accepted from his client in partial payment of his fees.

### Recommended Sanction

{¶ 9} In recommending a sanction for respondent's misconduct, the board weighed the mitigating and aggravating factors of his case. See BCGD Proc. Reg. 10(B).

{¶ 10} The parties stipulated to the mitigating factors that (1) respondent had no prior disciplinary record, (2) he had made timely good-faith efforts at restitution, (3) he made a full and free disclosure of information and was cooperative in the disciplinary proceedings, and (4) he had a good reputation in the legal community apart from the underlying misconduct. BCGD Proc.Reg. 10(B)(2)(a), (c), (d), and (e). According to the parties, respondent on his own initiative had also received instruction on ethics and practice management from a former president of the Mahoning County Bar Association. In addition, the board found that respondent had acknowledged his wrongdoing in this isolated incident of misconduct.

{¶ 11} Adopting the panel's report, the board recommended that respondent receive a public reprimand for his misconduct.

### Review

{¶ 12} We agree that respondent violated DR 1–102(A)(6) and 5–101(A)(1), as found by the board. Moreover, we generally impose a public reprimand when a sexual relationship develops during an attorney-client relationship if the affair is legal and consensual and has not compromised client interests. *Disciplinary Counsel v. Moore*, 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423, citing *Disciplinary Counsel v. DePietro* (1994), 71 Ohio St.3d 391, 643 N.E.2d 1145; *Disciplinary Counsel v. Paxton* (1993), 66 Ohio St.3d 163, 610 N.E.2d 979; *Disciplinary Counsel v. Ressing* (1990), 53 Ohio St.3d 265, 559 N.E.2d 1359. Therefore, we find the recommended sanction appropriate.

{¶ 13} Respondent is therefore publicly reprimanded for his violations of DR 1–102(A)(6) and 5–101(A)(1). Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

Jonathan E. Coughlan, Disciplinary Counsel, and Brian E. Shinn, Assistant Disciplinary Counsel, for relator.

Mitchell, Allen, Cantalano & Boda Co., L.P.A., and William C. Mann, for respondent.