CINCINNATI BAR ASSOCIATION *v.* SCHMALZ.

[Cite as *Cincinnati Bar Assn. v. Schmalz,*

123 Ohio St.3d 130, 2009-Ohio-4159.]

*Attorneys at law — Misconduct — Public reprimand.*

(No. 2009-0661 — Submitted May 19, 2009 — Decided August 25, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 08-082.

_____

**Per Curiam.**

{¶ 1} Relator, Cincinnati Bar Association, filed a complaint against Cincinnati lawyer Anna Schmalz, Attorney Registration No. 0078103, for violating the Rules of Professional Conduct. The Board of Commissioners on Grievances and Discipline recommends that we adopt the stipulated facts and accede to the respondent's consent-to-discipline agreement in the form of a public reprimand. In the consent-to-discipline agreement, respondent admits that she violated her oath of office and also violated Prof.Cond.R. 1.7(a)(2) (a lawyer's representation of a client creates a conflict of interest if there is a substantial risk that the lawyer's representation will be compromised by the lawyer's personal interests) and 1.8(j) (a lawyer shall not solicit or engage in sexual activity with a client unless the relationship existed before the representation commenced). The board's recommendation states that dropping the charges involving lying to the investigator is justified by mitigating circumstances.

{¶ 2} We agree with the recommendation, and we order that respondent be publicly reprimanded for her misconduct.

**Background**

**{¶ 3}** The facts in this case have been stipulated to by the parties. On December 7, 2006, respondent was appointed to represent a criminal defendant with respect to two separate indictments. Both cases were tried before a jury in March 2007, and the jury acquitted the defendant with respect to all charges in the first indictment and all but two charges in the second indictment. As to those charges, the jury could not reach a verdict.

**{¶ 4}** Prosecutors offered the defendant a plea bargain with respect to the remaining charges that would have required him to serve two years, and respondent consistently advised her client to accept the offer. But the defendant declined, and at a second trial in November 2007, the defendant was convicted and sentenced to five years and five months in prison. Later in November 2007, the defendant filed a grievance against respondent and informed the court of the allegations pertinent to this matter: that respondent had engaged in a romantic relationship with him, that that relationship had left the defendant vulnerable and had created a conflict of interest, and that the relationship had motivated the respondent to seek acquittal rather than a plea bargain so the two could be together.

**{¶ 5}** The relator investigated the grievance by interviewing the respondent twice and serving interrogatories on her. During the initial interview, respondent was unrepresented and stated that she had developed a "friendship" with the client but did not admit the sexual nature of the relationship. Subsequently, an attorney investigating the defendant's allegations for the trial judge supplied a CD that contained recordings of over 50 hours of telephone calls between the defendant and respondent. The calls had been monitored by the Hamilton County Sheriff's Department with the knowledge of the participants. Among the approximately 110 half-hour recorded conversations between respondent and her client were explicit descriptions of sexual acts and professions

2

of love between the two. In at least three calls, respondent requested and/or engaged in telephonic sexual activity with her client.

{¶ 6} In her response to relator's interrogatories, respondent admitted that she had engaged in "personal conversations" that were "inappropriate." After the CD was supplied to respondent's counsel, relator's investigator conducted a second interview with respondent in which she acknowledged the sexual component of the relationship and admitted that she had discussed with the client the possibility of pursuing the relationship following his release from custody. In that context, respondent stated, "I screwed up. I got too close."

{¶ 7} The parties have entered into a consent-to-discipline agreement filed pursuant to Section 11 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.") and also a stipulation of facts in support of that agreement. The stipulation identifies respondent's initial minimization of her relationship with the client as an aggravating factor pursuant to BCGD Proc.Reg. 10(B)(1)(f), but states in mitigation that respondent has made full disclosure to the board and has no prior disciplinary history, see BCGD Proc.Reg. 10(B)(2)(a) and (d). The parties have agreed to a public reprimand as an appropriate sanction. The board reviewed the stipulation and consent-to-discipline agreement and recommended that the court adopt the agreement.

## Disposition

{¶ 8} The consent agreement seeks a public reprimand for the respondent for violations of Prof.Cond.R. 1.7(a)(2) and 1.8(j). Our cases have dealt with sexual activity between lawyers and clients in a number of contexts, often under circumstances in which the sexual relationship formed part of a larger pattern of misconduct. At the one end of the spectrum, we disbarred a male lawyer who preyed upon the vulnerabilities of his clients in an egregious manner, engaged in sex with them, lied during the investigation, and showed little

acceptance of responsibility for the wrongfulness of his acts. *Disciplinary Counsel v. Sturgeon*, 111 Ohio St.3d 285, 2006-Ohio-5708, 855 N.E.2d 1221, ¶ 18, 29-30. In other cases, a sexual relationship has been linked with other disciplinary violations or an actual adverse impact on the quality of the legal representation; in such cases, we have ordered a suspension from the practice of law. See *Disciplinary Counsel v. Krieger*, 108 Ohio St.3d 319, 2006-Ohio-1062, 843 N.E.2d 765, ¶ 29, 30, and cases cited therein.

{¶ 9} The present case dwells at the end of the spectrum representing the least egregious cases of sexual misconduct. The parties stipulated that in spite of the improprieties, respondent effectively performed her function as attorney in the criminal representation and that a public reprimand for the stated violations will adequately deter her from further violations. In such cases, we have imposed a public reprimand. See *Disciplinary Counsel v. Engler*, 110 Ohio St.3d 138, 2006-Ohio-3824, 851 N.E.2d 502 ¶ 12-13; *Disciplinary Counsel v. DePietro* (1994), 71 Ohio St.3d 391, 392-393, 643 N.E.2d 1145. Consistent with this case law, we adopt the recommendation of the board and order that respondent be publicly reprimanded. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Peter Rosenwald and Jean M. Geoppinger, for relator.

John H. Burlew, for respondent.

_____