CINCINNATI BAR ASSOCIATION *v.* SEIBEL.

[Cite as *Cincinnati Bar Assn. v. Seibel,* 132 Ohio St.3d 411, 2012-Ohio-3234.]

*Attorneys—Misconduct—Improper treatment of retainer as nonrefundable— Failure to account to client or return file upon termination of representation—Failure to put contingent-fee agreement in writing— Public reprimand.*

(No. 2011-2058—Submitted January 18, 2012—Decided July 19, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-092.

_____

**Per Curiam**.

{¶ 1} Respondent, Ronald E. Seibel of Loveland, Ohio, Attorney Registration No. 0077296, was admitted to the bar in 2004. On December 6, 2010, relator, Cincinnati Bar Association, filed a complaint alleging that Seibel had accepted $2,500 from a client in two installments as a nonrefundable retainer, that he had failed to deposit the money into his client trust account, and that he had failed to return the client's file and provide an accounting when the client sought to terminate his representation.

{¶ 2} The parties submitted a consent-to-discipline agreement that included stipulated findings of fact and misconduct and recommended that Seibel receive a six-month stayed suspension, provided that he refund $2,000 to the client. The panel recommended that the agreement be accepted, but the board rejected it and sent the matter to the panel for further proceedings.

{¶ 3} After a hearing, the board adopted the parties' submitted stipulations of fact and misconduct but rejected the parties' proposed sanction of a

six-month stayed suspension. The board now recommends that we publicly reprimand Seibel. We adopt the board's recommendation.

**Misconduct**

**{¶ 4}** The stipulated facts show that Darlene Mincey retained Seibel in January 2007 to pursue a sexual-harassment and retaliation action against the University of Cincinnati. Mincey paid a $500 retainer, which Seibel treated as nonrefundable and deposited into his operating account, and which the parties agree Seibel later earned. Seibel and Mincey then entered into a verbal contingent-fee agreement that was never reduced to writing.

**{¶ 5}** Seibel represented Mincey in negotiations at an Equal Employment Opportunity Commission conciliation meeting with the university in August 2007. Mincey rejected the university's settlement offer and instructed Seibel to request a notice of right to sue and proceed with a federal lawsuit. After the conciliation meeting, Seibel requested another $2,000, which Mincey understood to be for litigation costs. Seibel, however, deposited the money in his operating account and claims that this payment was a part of the $2,500 nonrefundable retainer he regularly charges his clients.

**{¶ 6}** Seibel requested a right-to-sue letter from the EEOC numerous times, but through no fault of his own, he did not receive one. Over the next two and a half years, Mincey attempted to contact Seibel and spoke with him a few times. Seibel eventually discovered that the reason for the delay was that the EEOC had destroyed Mincey's file.

**{¶ 7}** Unhappy with the lack of progress, and unable to reach Seibel by phone, Mincey sent him a certified letter on March 1, 2010, requesting her files and an accounting of the $2,500 retainer she had paid. Seibel did not return Mincey's file or provide her with an accounting, but on October 26, 2011, he issued a $2,000 refund to Mincey. Mincey retained another attorney to pursue her

case, and Seibel has forwarded a copy of Mincey's file to her new counsel. Her case has not been prejudiced as a result of Seibel's actions or inaction.

{¶ 8} The parties stipulated and the board found that Seibel's conduct violated Prof.Cond.R. 1.5(c)(1) (requiring an attorney to set forth a contingent-fee agreement in a writing signed by the client), 1.5(d)(3) (prohibiting a lawyer from charging a fee denominated as "earned upon receipt" or "nonrefundable" without simultaneously advising the client in writing that the client may be entitled to a refund of all or part of the fee if the lawyer does not complete the representation), 1.15(a) (requiring a lawyer to hold funds of clients in an interest-bearing client trust account, separate from the lawyer's own funds), and 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive).

{¶ 9} We adopt the facts and misconduct as stipulated by the parties and found by the board.

### Sanction

{¶ 10} In recommending a sanction, the board considered the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B)(1) and (2). *See Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.

{¶ 11} The parties did not stipulate to any aggravating or mitigating factors, and the board did not find that any aggravating factors were present. The board attributes mitigating effect, however, to the facts that Seibel does not have a prior disciplinary record, did not act with a dishonest or selfish motive, has accepted moral and legal responsibility for his misconduct, has apologized to the client, and ultimately released the client's file to her new counsel. *See* BCGD Proc.Reg. 10(B)(2)(a) and (b). While acknowledging that Seibel did not make restitution before submitting the original consent-to-discipline agreement, the board found that he has now done so and that his delay was due to his

inexperience with the appropriate timing and procedure for making restitution. The board states that relator has not disputed Seibel's explanation for the delay and has not argued that his initial failure to make restitution should be considered as an aggravating factor. Thus, it appears that the board considered Seibel's belated restitution to be a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(c).

{¶ 12} In their consent-to-discipline agreement and at the hearing, the parties agreed that in line with the sanctions imposed for similar misconduct, a six-month suspension, all stayed, is the appropriate sanction for Seibel's misconduct. *See, e.g., Columbus Bar Assn. v. Halliburton-Cohen*, 106 Ohio St.3d 98, 2005-Ohio-3956, 832 N.E.2d 42 (imposing a six-month, fully stayed suspension for an attorney who charged a clearly excessive fee in the form of a "lost-opportunity fee" and failed to promptly refund unearned fees upon her withdrawal from employment); *Cleveland Bar Assn. v. Ramos*, 119 Ohio St.3d 36, 2008-Ohio-3235, 891 N.E.2d 730 (imposing a six-month stayed suspension for an attorney who neglected one client's case and failed to properly maintain and account for fees that client had advanced); and *Cuyahoga Cty. Bar Assn. v. Cook*, 121 Ohio St.3d 9, 2009-Ohio-259, 901 N.E.2d 225 (imposing a six-month stayed suspension for an attorney who charged a flat earned-upon-receipt retainer plus a 20 percent contingent fee, failed to deposit unearned funds in a client trust account, and failed to maintain records and account for client funds in his possession).

{¶ 13} The board, however, rejected the parties' proposed sanction, finding that Seibel's misconduct was less egregious than the conduct in other cases in which we had imposed only public reprimands. *See Cincinnati Bar Assn. v. Schmalz*, 123 Ohio St.3d 130, 2009-Ohio-4159, 914 N.E.2d 1024 (publicly reprimanding an attorney who had engaged in an inappropriate romantic relationship with a client); *Akron Bar Assn. v. Finan*, 118 Ohio St.3d 106, 2008-

4

Ohio-1807, 886 N.E.2d 229 (publicly reprimanding an attorney who had signed a client's name to an affidavit and then notarized that signature); and *Lorain Cty. Bar Assn. v. Godles*, 128 Ohio St.3d 279, 2010-Ohio-6274, 943 N.E.2d 988 (publicly reprimanding an attorney who had done very little work on his client's case and failed to fully communicate with the client regarding management and status of the case). The board observed that Seibel did not have any inappropriate contact with a client or engage in dishonesty about the misconduct as in *Schmalz*, that he did not attempt to deceive others as in *Finan*, and that he did not engage in ineffective representation resulting in a malpractice action as in *Godles*.

{¶ 14} The board also cited a number of additional factors that it considered to be mitigating, including (1) the absence of any injury to the client, (2) the absence of any alleged malpractice or incompetence, (3) the unique events precipitating the misconduct, (4) Seibel's sincere remorse, (5) his "complete cooperation with the investigation as well as with successor counsel," and (6) his effective performance of his attorney functions prior to the EEOC's destruction of his client's file. *See* BCGD Proc.Reg. 10(B)(2)(d). Neither party has objected to the board's recommendation.

{¶ 15} Having considered Seibel's conduct, the presence of substantial mitigating factors, and the sanctions imposed for similar misconduct, we agree that a public reprimand is the appropriate sanction for Seibel's misconduct.

{¶ 16} Accordingly, Ronald E. Seibel is publicly reprimanded for charging a nonrefundable fee without advising the client that she might be entitled to a refund of all or part of the fee if he did not complete the representation, failing to memorialize a contingent-fee agreement in a writing signed by the client, failing to hold a client's funds in an interest-bearing client trust account, and failing to promptly deliver the unearned fees and the client's file upon the termination of his representation. Costs are taxed to Seibel.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Edwin Patterson III, Bar Counsel, and Robert F. Laufman, for relator.

Ronald E. Seibel, pro se.

_____