DISCIPLINARY COUNSEL *v.* DETWEILER.

**[Cite as *Disciplinary Counsel v. Detweiler,* 135 Ohio St.3d 447,**

**2013-Ohio-1747.]**

*Attorneys—Misconduct—Sexual advances on client—Conflict of interest—One-year suspension.*

(No. 2012-1711—Submitted February 5, 2013—Decided May 2, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-065.

_____

**Per Curiam**.

{¶ 1} Respondent, William Jeffrey Detweiler of Akron, Ohio, Attorney Registration No. 0039269, was admitted to the practice of law in Ohio in 1987.

{¶ 2} In October 2010, we publicly reprimanded Detweiler for engaging in an improper sexual relationship with his client. *Disciplinary Counsel v. Detweiler*, 127 Ohio St.3d 73, 2010-Ohio-5033, 936 N.E.2d 498. On July 26, 2011, relator, disciplinary counsel, charged Detweiler with engaging in conduct that adversely reflects on his fitness to practice law by soliciting a client for sexual favors and continuing to represent the client despite the substantial risk that his own personal interests conflicted with those of the client.

{¶ 3} The parties submitted a consent-to-discipline agreement, in which they stipulated that Detweiler had committed the charged misconduct and that a six-month, fully stayed suspension was the appropriate sanction for that misconduct. A panel of the Board of Commissioners on Grievances and Discipline recommended that the agreement be adopted. The board, however, rejected it and remanded the matter for further proceedings.

{¶ 4} Before the panel hearing, the parties submitted stipulated facts, violations, aggravating and mitigating factors, and exhibits. Once again, they recommended that Detweiler receive a six-month, fully stayed suspension for his misconduct. The panel adopted the parties' stipulations of fact and misconduct but, noting the nonconsensual and unwelcome nature of Detweiler's advances, recommended that he be suspended for one year, all stayed on the conditions that he commit no further misconduct, submit to an evaluation by the Ohio Lawyers Assistance Program ("OLAP"), and comply with any treatment recommendations.

{¶ 5} The board adopted the panel's findings of fact and conclusions of law. Noting that the client had felt trapped because she could not afford to discharge Detweiler and retain new counsel, however, the board recommended that he be suspended for one year with six months stayed on the conditions recommended by the panel.

{¶ 6} Detweiler objects to the increased sanction recommended by the board and urges this court to adopt the one-year fully stayed suspension recommended by the panel. For the reasons that follow, we overrule Detweiler's objection, adopt the board's findings of fact and misconduct, but find that his conduct warrants a one-year actual suspension from the practice of law.

**Misconduct**

{¶ 7} In June 2007, a former client paid Detweiler a $3,500 retainer to handle her divorce. After filing the divorce complaint, Detweiler began to send the client text messages of a personal nature. His initial texts appeared to be harmless inquiries about the client's well-being and Cleveland Browns football. They later included social invitations, which progressed into comments of a sexual nature. Detweiler texted the client about her clothing and how it made him feel sexually, and indicated that he wanted to have sex with her. He continued "sexting" the client and admits that sometime between November 2007 and January 2008 he sent her a nude picture of his lower body in a state of sexual

arousal. The client did not initially make her discomfort known to Detweiler, but following an early 2008 text message in which he asked her to have oral sex with him, she sent him a text message rejecting his solicitation.

{¶ 8} In her grievance, the client stated that when Detweiler sent her his nude photograph, she had already spent $10,000 in fees and expenses and could not afford to retain new counsel. Therefore, she continued his representation and tried to avoid his sexual advances until September 2008, when she voluntarily dismissed her complaint for divorce after temporarily reconciling with her husband. At no time did the client have sex with Detweiler or even meet with him socially.

{¶ 9} The parties stipulated and the board found that Detweiler's conduct violated Prof.Cond.R. 1.7(a)(2) (prohibiting representation if a lawyer's personal interests will materially limit his ability to carry out appropriate action for the client), 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed prior to the client-lawyer relationship), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 10} We adopt these findings of fact and misconduct.

### Sanction

{¶ 11} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10. *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 12} The parties stipulated that the client harmed by Detweiler's misconduct was vulnerable. *See* BCGD Proc.Reg. 10(B)(1)(h). The board found

not only that the conduct caused harm to a vulnerable client, but that Detweiler had acted with a selfish motive and had also engaged in a pattern of misconduct including the conduct at issue in this case and in his previously sanctioned, though subsequent, conduct. *See* BCGD Proc.Reg. 10(B)(1)(b), (c), and (h). The only mitigating factor stipulated by the parties and found by the board is Detweiler's cooperative attitude toward the disciplinary proceedings. *See* BCGD Proc.Reg. 10(B)(2)(d). But the board also noted Detweiler's expressed remorse and his acknowledgment of the severity of his misconduct.

{¶ 13} Although Detweiler testified that he had obtained marital counseling, he has not obtained any individual counseling to address the issues underlying his inappropriate conduct toward his female clients. In addition, the board expressed concern that his efforts to strengthen his wife's trust in him by providing her with the passwords to his personal and business e-mail accounts had the potential to expose client confidences in violation of Prof.Cond.R. 1.6 (prohibiting a lawyer from revealing confidential client information without informed consent).

{¶ 14} Although the board had previously rejected their consent-to-discipline agreement, the parties continued to advocate a six-month fully stayed suspension. The panel, however, found that Detweiler's sexual advances toward his client were offensive, unwelcome, and rejected by the client. In light of these facts and his pattern of misconduct, the panel recommended that Detweiler be suspended from the practice of law for one year, all stayed on the conditions that he engage in no further misconduct, submit to an OLAP evaluation, and comply with any treatment recommendations.

{¶ 15} But citing the client's financial vulnerability at the time Detweiler made his unwelcome sexual advances, the board recommends that he be suspended for one year with just six months stayed on the conditions recommended by the panel. *See* BCGD Proc.Reg. 10(B)(1)(h).

4

**{¶ 16}** Detweiler objects to the board's upward deviation from the panel's recommended sanction, challenging the validity of its finding that the affected client was financially vulnerable and felt compelled to continue his representation despite his sexual overtures. In support of this argument, he asserts that the client was not financially tied to him, because the domestic-relations court ordered her husband to pay the full amount of her fees and costs during the pendency of the divorce. Nothing in the record supports this assertion. And regardless of who would ultimately bear the responsibility for paying the client's legal fees, the client "felt completely trapped" and unable to afford to hire a new attorney, having already expended more than $10,000 for Detweiler's representation.

**{¶ 17}** We have publicly reprimanded attorneys, including Detweiler, for developing sexual relationships with clients when the affairs are legal and consensual and have not compromised the client's interests. *E.g.*, *Disciplinary Counsel v. Detweiler*, 127 Ohio St.3d 73, 2010-Ohio-5033, 936 N.E.2d 498, ¶ 5, citing *Cincinnati Bar Assn. v. Schmalz,* 123 Ohio St.3d 130, 2009-Ohio-4159, 914 N.E.2d 1024, ¶ 9; and *Disciplinary Counsel v. Engler*, 110 Ohio St.3d 138, 2006-Ohio-3824, 851 N.E.2d 502, ¶ 12-13. We have imposed a greater sanction for such conduct when the attorney had a prior disciplinary record at the time of his offense. *E.g., Disciplinary Counsel v. Siewert*, 130 Ohio St.3d 402, 2011-Ohio-5935, 958 N.E.2d 946 (imposing a six-month, stayed suspension on an attorney with a prior record of neglecting legal matters who later had a consensual sexual relationship with a client).

**{¶ 18}** In *Toledo Bar Assn. v. Burkholder*, 109 Ohio St.3d 443, 2006-Ohio-2817, 848 N.E.2d 840, we imposed a six-month, conditionally stayed suspension on an attorney who made inappropriate sexual advances toward a client. In *Disciplinary Counsel v. Moore*, 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423, ¶ 2-7, 20, we imposed a one-year fully stayed suspension and two years of probation on an attorney who had made unsolicited, unwelcome, and

inappropriate sexual comments to one client and had engaged in consensual sexual relations with another client.

**{¶ 19}** In more extreme cases, we have indefinitely suspended or permanently disbarred attorneys who have made unwelcome sexual advances toward their clients that included unwelcome physical contact. *See, e.g.*, *Cleveland Metro. Bar Assn. v. Lockshin*, 125 Ohio St.3d 529, 2010-Ohio-2207, 929 N.E.2d 1028 (imposing an indefinite suspension on an attorney who made unwelcome and inappropriate sexual comments to multiple clients [including a juvenile], a potential witness, and a sheriff's department employee and touched several of his victims in a sexually provocative manner); and *Disciplinary Counsel v. Sturgeon*, 111 Ohio St.3d 285, 2006-Ohio-5708, 855 N.E.2d 1221 (permanently disbarring an attorney who solicited and received oral sex from one client, touched another client in an unwanted sexual manner and solicited sex in exchange for a reduced legal fee, and exposed himself after soliciting oral sex from a third client).

**{¶ 20}** Those cases may not present conduct identical to that of Detweiler, but they do provide a framework from which we can evaluate the severity of his conduct. While Detweiler's conduct may not be as egregious as that of Lockshin or Sturgeon, it is more disturbing than that of other attorneys who have engaged in consensual sexual affairs with clients or made inappropriate sexual comments to their clients. Not only did Detweiler make repeated unsolicited and unwelcome sexual advances toward a vulnerable client, but when she ignored those advances, he upped the ante by sending her a nude photograph of himself in a state of sexual arousal. Based on this disturbing escalation of the improper and offensive conduct Detweiler directed toward his client, we are not convinced that a stayed suspension will adequately protect the public from future harm. Therefore, we find that a one-year actual suspension from the practice of law is the appropriate sanction for Detweiler's misconduct.

**{¶ 21}** Accordingly, William Jeffrey Detweiler is suspended from the practice of law in Ohio for one year, and his reinstatement shall be conditioned on the submission of proof that he has submitted to an OLAP evaluation and complied with any treatment recommendations. Costs are taxed to Detweiler.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER and O'NEILL, JJ., dissent and would impose a one-year suspension with six months stayed.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Philip A. King, Assistant Disciplinary Counsel, for relator.

William Jeffrey Detweiler, pro se.

_____