**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Sarver*, **Slip Opinion No. 2018-Ohio-4717.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4717

DISCIPLINARY COUNSEL *v.* SARVER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Sarver*, Slip Opinion No. 2018-Ohio-4717.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including soliciting or engaging in sexual activity with a client, committing an illegal act that adversely reflects on the lawyer's honesty or trustworthiness, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Two-year license suspension, with 18 months stayed on conditions.*

(No. 2017-1081—Submitted May 22, 2018—Decided November 28, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-015.

_____

**KENNEDY, J.**

{¶ 1} Respondent, Jason Allan Sarver, of Rockbridge, Ohio, Attorney Registration No. 0082073, was admitted to the practice of law in Ohio in 2007.

{¶ 2} In a formal complaint certified to the Board of Professional Conduct on April 6, 2017, relator, disciplinary counsel, charged Sarver with four ethical violations arising from his sexual relationship with a client. Initially, the parties entered into an agreement for discipline by consent and stipulated to a two-year suspension, with the entire suspension stayed on just one condition—that Sarver not engage in any further misconduct. The board accepted the consent-to-discipline agreement and the stipulated sanction and recommended that we do so also. However, we rejected that sanction and remanded the matter for additional proceedings. 150 Ohio St.3d 1439, 2017-Ohio-7742, 82 N.E.3d 1173. Subsequently, at a hearing before a panel of the board, the parties presented stipulations of fact, misconduct, and aggravating and mitigating factors, submitted 28 joint exhibits, and recommended that Sarver be suspended from the practice of law for two years, with the entire suspension stayed on multiple conditions.

{¶ 3} The panel adopted the parties' stipulations and recommended sanction, and the board again adopted the panel's report in its entirety, and no objections have been filed. Although we agree with the finding that Sarver committed professional misconduct, we reject the board's recommended sanction and conclude that Sarver's misconduct warrants a suspension from the practice of law for two years, with the last 18 months of the suspension stayed on the conditions recommended by the board.

**Misconduct**

{¶ 4} Sarver and J.B. met each other in 2012 when Sarver represented J.B.'s then boyfriend in a legal matter. On September 11, 2015, J.B. reached out to Sarver when she needed "a good attorney for felony……some stupid shit happened and I really need to talk to u its not good." The next day, Sarver and J.B. met at a

Columbus restaurant, discussed J.B.'s criminal case over drinks, and then had sex in Sarver's vehicle in the parking lot.

{¶ 5} J.B. was charged with theft in the Hocking County Municipal Court and a warrant was issued for her arrest. According to Sarver, he was unaware that a warrant had been issued when he subsequently instructed her to turn off the Global Positioning System ("GPS") on her mobile phone so that law enforcement could not track her. Several days later, a grand jury indicted J.B. for multiple felonies, and due to Sarver's advice to turn off the GPS on her mobile phone, she avoided arrest for almost one month before being apprehended.

{¶ 6} The judge presiding over J.B.'s arraignment appointed Sarver to represent her, and Sarver, now representing an indigent client as court-appointed counsel, engaged in sexual activity with her at least seven more times over the next four months. They also trespassed onto Sarver's neighbor's property to use a hot tub.

{¶ 7} In the meantime, Sarver filed a petition to run for Hocking County Prosecuting Attorney. And although rumors of his sexual relationship with J.B. soon spread, Sarver falsely denied the rumors to the judge presiding over J.B.'s criminal case on two separate occasions. Around the same time that Sarver had lied about his inappropriate relationship with J.B. to the judge, the Hocking County Sheriff's Office began investigating Sarver. Detectives interviewed J.B. and promised her a reduced sentence if she disclosed the true nature of her relationship with Sarver. J.B. agreed to cooperate with the investigation, and during her interview with detectives, she stated that Sarver had "insinuated" that he would help J.B. with her "warrants and cases for sexual favors." She told the detectives that she had "problems saying no to something like that * * *. You feel kinda forced into it. * * * And, you know, of course, I had something over my head, I was facing 7 felonies."

**{¶ 8}** The state, through a special prosecutor, charged Sarver with several offenses, including two counts of sexual battery in violation of R.C. 2907.03(A)(1), which prohibits knowingly coercing another to engage in sexual conduct. However, the sexual-battery counts were dismissed as part of an agreement under which Sarver pleaded guilty to three misdemeanor counts of criminal trespassing (based on Sarver's unauthorized use of his neighbor's hot tub) and one misdemeanor count of obstructing official business (based on his advice to J.B. to turn off her phone's GPS while there was an outstanding warrant for her arrest). Additionally, as part of the plea agreement, Sarver had to withdraw his candidacy for county prosecuting attorney and the special prosecutor dismissed the remaining counts of the indictment. The court sentenced Sarver to two years of community control and fined him $1,250.

**{¶ 9}** After we rejected the board's original recommendation to accept the parties' consent-to-discipline agreement and remanded the cause to the board for further proceedings, a hearing was held before a panel, the parties presented stipulations of fact, misconduct, and aggravating and mitigating factors, and they recommended that Sarver be suspended from the practice of law for two years, with the entire suspension stayed on multiple conditions.

**{¶ 10}** The panel adopted the parties' stipulations and recommended sanction. The board adopted the panel's report in its entirety and found that Sarver's conduct violated Prof.Cond.R. 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship between them existed prior to the client-lawyer relationship), 8.4(b) (prohibiting a lawyer from committing an illegal act that adversely reflects on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

4

**Sanction**

{¶ 11} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 12} The parties stipulated and the board found the presence of two aggravating factors—that Sarver acted with a dishonest and selfish motive and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(2) and (4).

{¶ 13} Stipulated mitigating factors found by the board include the absence of prior discipline, Sarver's full and free disclosure to the board and cooperative attitude toward the disciplinary proceedings, and other penalties and sanctions incurred for his misconduct. *See* Gov.Bar R. V(13)(C)(1), (4), and (6). The parties stipulated and the board found that Sarver had submitted letters attesting to his good character and reputation, and the judge who had presided over J.B.'s criminal case also submitted a letter expressing his agreement with the proposed sanction. *See* Gov.Bar R. V(13)(C)(5). In addition, the board noted that Sarver had successfully completed court-ordered counseling and made a good-faith effort to address the issues underlying his misconduct by entering into a contract with the Ohio Lawyers Assistance Program ("OLAP") and attending additional counseling with his spouse.

{¶ 14} In considering the appropriate sanction for Sarver's misconduct, the board emphasized that "compelling" mitigating factors in this case warranted a two-year suspension, with the entire suspension stayed on conditions:

> (1) not only was there no harm to the client but the client leveraged her relationship with [Sarver] to get a better plea deal by agreeing to testify against him; (2) he received a very public reprimand of sorts from the local media because his arrest and indictment, while he was a candidate for prosecutor, were front-page news; (3) he was over-

indicted with 14 felonies and four misdemeanors including bribery and sexual battery charges; (4) he was arrested twice and spent two nights in jail; (5) and he was forced to withdraw his candidacy for county prosecutor.

The board explained that "[w]hat makes these factors so significant is that they all stem from [Sarver's] consensual sexual relationship with his client."

{¶ 15} We agree that Sarver's conduct violated Prof.Cond.R. 1.8(j), 8.4(b), 8.4(c), and 8.4(d). However, we disagree that a two-year suspension, with the entire suspension stayed on the conditions recommended by the board, is the appropriate sanction for that misconduct.

{¶ 16} Prof.Cond.R. 1.8(j) prohibits a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship between them predated the client-lawyer relationship. In the absence of a preexisting, consensual sexual relationship, seeking or having sex with a client is a per se violation. The fact that a client appears to have consented does not mitigate the attorney's misconduct or provide a defense against a violation. Indeed, Comment 17 to Prof.Cond.R. 1.8(j) explains that "this rule prohibits the lawyer from engaging in sexual activity with a client *regardless of whether the relationship is consensual and regardless of the absence of prejudice to the client*, unless the sexual relationship predates the client-lawyer relationship." (Emphasis added.) *Compare* Prof.Cond.R. 1.7 (allowing client to consent to representation of another client that will be directly adverse to the client in certain circumstances); Prof.Cond.R. 1.8(a) (allowing client to consent to an attorney's transacting business with the client when certain conditions are met). And Gov.Bar R. V(13)(C) does not identify the client's consent as a mitigating factor that may be considered in favor of a less severe sanction.

**{¶ 17}** We have admonished lawyers and sanctioned them with an actual suspension from the practice of law for engaging in sexual conduct with clients with whom they had no sexual relationship prior to the representation. "Most disturbing are cases in which a lawyer has had sex with a client while defending the client against criminal charges * * * or has accepted sex in lieu of fees." *Disciplinary Counsel v. Krieger*, 108 Ohio St.3d 319, 2006-Ohio-1062, 843 N.E.2d 765, ¶ 29.

**{¶ 18}** In *Disciplinary Counsel v. Booher*, 75 Ohio St.3d 509, 664 N.E.2d 522 (1996), Booher had been appointed to represent a female client who was facing felony charges. When Booher met with his client to discuss a possible prison sentence in a jail meeting room, they engaged in sexual activity. The client reported the incident to the judge presiding over her case, resulting in disciplinary action against Booher. The board recommended a one-year suspension of Booher's license, with the entire suspension stayed on conditions. We concluded, however, that a more severe sanction was warranted, explaining:

> The case before us involves court-appointed counsel for a criminal defendant. The lawyer-client relation in a criminal matter is inherently unequal. The client's reliance on the ability of her counsel in a crisis situation has the effect of putting the lawyer in a position of dominance and the client in a position of dependence and vulnerability. The more vulnerable the client, the heavier is the obligation upon the attorney not to exploit the situation for his own advantage. Whether a client consents to or initiates sexual activity with the lawyer, the burden is on the lawyer to ensure that all attorney-client dealings remain on a professional level.

*Id*. at 510. We also noted that because the client was incarcerated, Booher had

abused his status as an officer of the court by meeting with the client and engaging in sexual activity with her in the jail. We therefore imposed a one-year actual suspension.

{¶ 19} In *Disciplinary Counsel v. Freeman*, 106 Ohio St.3d 334, 2005-Ohio-5142, 835 N.E.2d 26, Freeman paid his 18-year-old female client—who was facing serious criminal charges—$150 to pose for nude photographs. And after the attorney-client relationship had ended, Freeman offered his underage client alcohol and solicited her to perform sex acts in exchange for specific monetary amounts. Citing *Booher*, this court explained that "[w]e have denounced the patent impropriety of similar misconduct before." *Freeman* at ¶ 12. And given the reprehensible nature of Freeman's conduct and our obligation to protect the public, we suspended his license to practice law for an actual six-month term. *Id*. at ¶ 16.

{¶ 20} In *Krieger*, 108 Ohio St.3d 319, 2006-Ohio-1062, 843 N.E.2d 765, at ¶ 33, we explained that an assistant public defender "took advantage of the 'inherently unequal' balance of power between a criminal defense lawyer and his or her client" when Krieger had a sexual relationship with—and provided financial assistance to—a male client whom she had previously represented as a juvenile and continued to represent in other legal matters. The attorney had also lied about the relationship to her employer, the public defender, and impeded the public defender in providing competent and objective representation to this indigent defendant, eventually causing the public defender to refuse to provide him with future legal representation. *Id*. at ¶ 28, 34. We suspended Krieger from the practice of law for two years, with one year of the suspension stayed on conditions. *Id.* at ¶ 36.

{¶ 21} In *Akron Bar Assn. v. Williams*, 104 Ohio St.3d 317, 2004-Ohio-6588, 819 N.E.2d 677, the attorney represented a female client in a domestic-relations proceeding and defended her against charges for driving under the influence and driving with a suspended license. During this time, the client "was in danger of losing custody of her children, had little, if any, money to pay for legal

assistance, was struggling with drug use, and was in counseling for having attempted suicide." *Id.* at ¶ 3. Nonetheless, Williams began a sexual relationship with the client with an understanding that she would not be charged for his legal services. After the client filed a grievance, Williams lied in a deposition under oath when he denied that he was having a sexual relationship with her. *Id.* at ¶ 6. Noting the "egregious" misconduct in which the attorney "[took] advantage of a vulnerable client [and] lied under oath to hide his misdeeds," we suspended Williams's law license for two years, with the last 18 months of the suspension stayed on conditions. *Id.* at ¶ 15-16.

{¶ 22} These cases all involved attorneys who took advantage of the attorney-client relationship and their clients' vulnerable circumstances for the attorneys' own sexual gratification. And in each case, we determined that an actual suspension was the appropriate sanction for their misconduct.

{¶ 23} In this case, however, the board concluded that "compelling mitigating factors" supported adopting the parties' recommendation of a two-year suspension, with the entire suspension stayed on conditions. It noted that "not only was there no harm to the client but the client leveraged her relationship with [Sarver] to get a better plea deal by agreeing to testify against him." The board also explained that other negative consequences that Sarver experienced—a public shaming "of sorts" from the local media, his being "over-indicted with 14 felonies and four misdemeanors," his two arrests and the two nights that he spent in jail, and his being forced to withdraw his candidacy for county prosecutor—were "significant" because "they all stem[med] from [Sarver's] consensual sexual relationship with his client."

{¶ 24} However, the board's finding that there was a consensual relationship seems oblivious to the facts that (1) J.B. was an indigent criminal defendant, (2) Sarver was her court-appointed, criminal-defense attorney, (3) "[t]he lawyer-client relation in a criminal matter is inherently unequal," *Booher*, 75 Ohio

St.3d at 510, 664 N.E.2d 522, and (4) "[t]he client's reliance on the ability of her counsel in a crisis situation has the effect of putting the lawyer in a position of dominance and the client in a position of dependence and vulnerability," *id*. This power imbalance " 'enable[s] the lawyer to dominate and take unfair advantage' " of the client. *Iowa Supreme Court Bd. of Professional Ethics & Conduct v. Hill*, 540 N.W.2d 43, 44 (Iowa 1995), quoting former Iowa Code of Professional Responsibility EC 5-25.

**{¶ 25}** Reported cases are filled with clients who have said that they submitted to their attorney's sexual advances out of fear that refusing to submit would affect the quality of their representation at a time of vulnerability and dependence on the attorney. *E.g.*, *Disciplinary Counsel v. Detweiler*, 135 Ohio St.3d 447, 2013-Ohio-1747, 989 N.E.2d 41, ¶ 20; *Disciplinary Counsel v. Moore*, 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423, ¶ 12; *Williams*, 104 Ohio St.3d 317, 2004-Ohio-6588, 819 N.E.2d 677, at ¶ 4; *In re Vogel*, 482 S.W.3d 520, 525, 544 (Tenn.2016); *Iowa Supreme Court Atty. Disciplinary Bd. v. Moothart*, 860 N.W.2d 598, 617 (Iowa 2015); *Matter of Berg*, 264 Kan. 254, 281, 955 P.2d 1240 (1998); *In re Rinella*, 175 Ill.2d 504, 516, 677 N.E.2d 909 (1997).

**{¶ 26}** Here, Sarver met an indigent client "for drinks" and to discuss a serious criminal matter. At the end of the meeting, Sarver proceeded to have sex with her in his parked car, which the client described as a "favor" for his legal services. Then, after the client had been found indigent and Sarver had been appointed by the court to represent her, Sarver continued to engage in sexual activity with J.B. while she remained vulnerable and dependent on him as he defended her against serious criminal charges.

**{¶ 27}** Yet, although J.B. told detectives that she believed Sarver was helping her in exchange for sexual favors and that she had submitted to his sexual advances because of her legal jeopardy—and notwithstanding relator's statement at the hearing that J.B. still contended that the sexual activity with Sarver was not

consensual—the board never heard directly from her before making conclusions about the nature of her relationship with Sarver. Instead, the board essentially blamed the victim, J.B., for the negative consequences that *Sarver experienced* resulting from his own decision to engage in sexual relations with a vulnerable client whom he had been appointed to represent in a criminal case.

**{¶ 28}** And then, ignoring all the indications that Sarver exploited the attorney-client relationship to obtain "sexual favors," the board concluded that the client was all the better for it, because she "leveraged her relationship with [Sarver] to get a better plea deal." The mere fact that the client's criminal case was not prejudiced does not mean that she suffered no harm from Sarver's misconduct. *See Vogel*, 482 S.W.3d at 537 ("the use of [the client's] trust to her disadvantage constitutes injury"). As the Supreme Court of Colorado has explained, "a sexual relationship between lawyer and client during the course of the professional relationship is inherently and insidiously harmful." *People v. Boyer*, 934 P.2d 1361, 1363 (Colo.1997). The client may be psychologically and emotionally harmed by an exploitative sexual relationship regardless of the outcome of the legal case. *See Cleveland Metro. Bar Assn. v. Sleibi*, 144 Ohio St.3d 257, 2015-Ohio-2724, 42 N.E.3d 699, ¶ 15 (noting that the attorney's sexual relationships with clients caused those clients emotional harm); *State ex rel. Nebraska State Bar Assn. v. Denton*, 258 Neb. 600, 609, 604 N.W.2d 832 (2000) (noting that the attorney's sexual relationship with his client "caused further psychological harm to a vulnerable client").

**{¶ 29}** The abuse of the attorney-client relationship not only harms the dignity of the client, whose body and trust in her lawyer have been violated, but it also impugns the legal system as a whole. J.B., an indigent criminal defendant, turned to the court and the legal profession to protect her freedom and right to due process, only to be exploited for Sarver's sexual gratification.

**{¶ 30}** It is for all these reasons that Ohio has adopted a per se prohibition against an attorney's having a sexual relationship with a client when such a relationship did not exist before the attorney-client relationship was formed, and the professional-conduct rules do not indicate that a lesser sanction should be imposed on the attorney when the relationship "appears" to be consensual or when the client's case does not seem to have been prejudiced. And in keeping with the aspiration expressed in A Lawyer's Creed "to make the law and our legal system available to all," courts have the obligation to ensure that the lawyers appointed to represent indigent criminal defendants "offer loyalty, confidentiality, competence, diligence and [their] best judgment" and abide by their professional duty not to initiate a sexual relationship with a vulnerable client whose liberty and right to due process is at stake. A Lawyer's Creed, Appendix V to the Supreme Court Rules for the Government of the Bar. Failing to impose an actual suspension on a court-appointed, criminal-defense attorney who has violated Prof.Cond.R. 1.8(j) by having sex with his indigent client would contravene our obligation to protect the public.

**{¶ 31}** The board's finding that J.B. freely engaged in a relationship with Sarver ignores the power imbalance between an indigent client and court-appointed defense counsel, and its finding that J.B. had not been prejudiced discounts the inherent harm that results when an attorney abuses the attorney-client relationship in pursuit of the attorney's own sexual gratification. For all of these reasons, Sarver's misconduct of engaging in a sexual relationship with a client in a criminal case—during which he also obstructed official business, committed trespass, and lied about the relationship to a judge—warrants an actual suspension of his law license.

**{¶ 32}** Accordingly, Jason Allan Sarver is suspended from the practice of law in Ohio for two years, with 18 months of the suspension stayed on the conditions that he (1) comply with his December 12, 2017 OLAP contract, (2) take

the Multistate Professional Responsibility Exam and receive a passing score, (3) in addition to the requirements of Gov.Bar R. X, complete 12 hours of continuing legal education focused on professional ethics or attorney-client relationships, (4) serve a two-year period of monitored probation in accordance with Gov.Bar R. V(21), and (5) engage in no further misconduct. If Sarver fails to comply with any condition of the stay, the stay will be lifted and he will serve the full two-year suspension. Costs are taxed to Sarver.

Judgment accordingly.

O'DONNELL, FRENCH, and DEWINE, JJ., concur.

FISCHER, J., concurs in part and dissents in part, with an opinion joined by O'CONNOR, C.J., and DEGENARO, J.

_____

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 33} The sanction recommended by the Board of Professional Conduct, with the inclusion of conditions such as probation, is much improved from the previous discipline-by-consent agreement submitted to this court. I agree with the majority's position, however, that a two-year suspension, with the entire suspension stayed on the conditions recommended by the board, is an unsuitable sanction in this case. Although I agree with much of the majority's analysis, I believe that given the circumstances of this case, a longer actual suspension of respondent's, Jason Allan Sarver's, Ohio law license is warranted and is necessary to protect the public. Specifically, I find that a two-year suspension, with one year stayed on the conditions recommended by the board, would be a more appropriate sanction in this case. Therefore, I respectfully concur in part and dissent in part.

**A. An Actual Suspension of One Year is Warranted**

{¶ 34} I wholeheartedly agree with the majority that the board was incorrect to conclude that because Sarver's client, J.B., was not prejudiced in her criminal case, she was not harmed by Sarver's misconduct. Majority opinion at ¶ 28. And

I further agree with the board and the majority that Sarver acted selfishly and with a dishonest motive.

**{¶ 35}** But I believe that Sarver's actions necessitate a longer actual suspension of his law license. Here, Sarver violated four professional-conduct rules stemming from his sexual relationship with his indigent female client, J.B: Prof.Cond.R. 1.8(j), by engaging in sexual activity with a client; Prof.Cond.R. 8.4(b), by committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness; Prof.Cond.R. 8.4(c), by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and Prof.Cond.R. 8.4(d), by engaging in conduct that is prejudicial to the administration of justice.

**{¶ 36}** Generally, for many of these rule violations, including Prof.Cond.R. 1.8(j), whether an actual suspension is imposed depends on the facts of each case. *See Disciplinary Counsel v. Detweiler*, 135 Ohio St.3d 447, 989 N.E.2d 41, 2013-Ohio-1747, ¶ 17-20. However, when the violation of Prof.Cond.R. 1.8(j) involves an attorney and an indigent client, an actual suspension of an attorney's law license is warranted. *See Disciplinary Counsel v. Krieger*, 108 Ohio St.3d 319, 2006-Ohio-1062, 843 N.E.2d 765 (court-appointed attorney who engaged in a sexual relationship with her indigent juvenile client received a two-year suspension from the practice of law, with one year stayed on conditions); *Disciplinary Counsel v. Booher*, 75 Ohio St.3d 509, 664 N.E.2d 522 (1996) (court-appointed attorney who engaged in sexual activity with his indigent client in the county jail received an actual one-year suspension from the practice of law).

**{¶ 37}** We have also held that when an attorney engages in a course of conduct involving dishonesty, fraud, deceit, or misrepresentation, the attorney will serve an actual suspension from the practice of law. *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. While we have tempered that sanction in cases presenting an isolated incident in an otherwise unblemished career, *see, e.g.*, *Disciplinary Counsel v. Fumich*, 116 Ohio St.3d 257,

2007-Ohio-6040, 878 N.E.2d 6, this is not such a case. Sarver made a series of poor decisions over the course of at least six months stemming from his selfish motives to engage in a sexual relationship with his indigent client.

{¶ 38} The majority correctly emphasizes that the consensual nature of the sexual relationship between Sarver and J.B. does not excuse or provide a defense for Sarver's misconduct. But even if consent were a mitigating factor, given the imbalance of power inherent in an attorney-client relationship, I question whether J.B.—who was heavily dependent on Sarver for help with navigating the criminal-justice system and maintaining her liberty—could have given adequate informed consent. *See* Prof.Cond.R. 1.8(j), Comment 17.

{¶ 39} Furthermore, "[w]hether a client consents to or initiates sexual activity with the lawyer, the burden is on the lawyer to ensure that all attorney-client dealings remain on a professional level." *Booher*, 75 Ohio St.3d at 510, 664 N.E.2d 522. Here, it is apparent that Sarver did not meet his burden to maintain a professional relationship with J.B. Sarver immediately acted on J.B.'s request for help with her criminal case by contacting an assistant prosecuting attorney. The following day, Sarver met J.B. *for drinks* where they discussed her case and then proceeded to have sex in Sarver's vehicle. Sarver continued his sexual relationship with J.B., which included trespassing on the property of Sarver's neighbor to use the neighbor's hot tub. Sarver acted dishonestly and selfishly, and he continuously and repeatedly failed to maintain professionalism in his interactions with J.B.

{¶ 40} Perhaps the most disturbing behavior demonstrated by Sarver during this six-month period occurred when Sarver deceived the court at least three times. After establishing the attorney-client relationship with J.B., Sarver began a sexual relationship with her and *then sought* appointment by the court to serve as J.B.'s court-appointed, criminal-defense attorney. A court, in making appointments, must take into account "[t]he avoidance of conflicts of interest or other situations that may potentially delay timely completion of the case," Sup.R. 8(D)(4), and

"[i]ntangible factors, including the court['s] * * * view of a potential appointee's commitment to providing timely, cost-effective, quality representation to each prospective client," Sup.R. 8(D)(5). By seeking to be appointed to J.B.'s case and failing to disclose his relationship, Sarver misled the court as to his ability to adequately represent J.B. as her court-appointed, criminal-defense attorney. Making matters worse, Sarver *continued* his sexual relationship with J.B. after being appointed by the court and twice *lied* about the relationship to a caring judge when the judge expressed concern about the situation.

{¶ 41} While there are some mitigating factors in Sarver's favor, such as his lack of a disciplinary record, his cooperation with the board, and his character references, the mitigating factors do not outweigh Sarver's abhorrent behavior, boorish selfishness, and complete disregard for the legal profession. Sarver engaged in a sexual relationship with his indigent client who was facing serious felony charges, advised his client on how to evade authorities, and then misled and explicitly lied to the court about that relationship. As the majority correctly emphasizes, the most disturbing attorney-disciplinary cases are those in which a lawyer engages in sexual activity with a client while defending the client against criminal charges. *Krieger*, 108 Ohio St.3d 319, 2006-Ohio-1062, 843 N.E.2d 765, at ¶ 29. Given the facts of this case, I believe that this court should suspend Sarver from the practice of law in Ohio for two years, with one year of the suspension stayed on the conditions recommended by the board.

**B. The Additional Conditions Will Help Ensure Protection of the Public**

{¶ 42} While I believe that an actual one-year suspension of Sarver's law license is necessary to protect the public, I also believe that the board's newly recommended conditions will help to further protect the public.

{¶ 43} Originally, the board had accepted a discipline-by-consent agreement whereby disciplinary counsel and Sarver stipulated to a two-year suspension, fully stayed on just one condition—that Sarver not engage in further

misconduct during those two years. This court specifically rejected that recommended sanction and remanded the cause to the hardworking members of the board for further proceedings. I voted to reject the board's originally recommended sanction because that sanction did not adequately protect the public. 150 Ohio St.3d 1439, 2017-Ohio-7742, 82 N.E.3d 1173.

{¶ 44} Subsequently, the board again recommended that Sarver be suspended from the practice of law for two years, with the entire suspension conditionally stayed. The board included additional conditions that require Sarver to comply with his Ohio Lawyers Assistance Program ("OLAP") contract, take and pass the Multistate Professional Responsibility Exam, and, in addition to his normal continuing-legal-education ("CLE") requirements, complete 12 hours of CLE focused on professional ethics or relationships with clients. And most importantly, the conditions include a period of monitored probation under Gov.Bar R. V(21).

{¶ 45} Under Gov.Bar R. V(21)(A), disciplinary counsel must appoint an attorney or attorneys to monitor Sarver's compliance with all of the conditions listed above. The monitoring attorney or attorneys must then file written, certified reports with disciplinary counsel regarding the status of Sarver's compliance with the conditions of his probation, *see* Gov.Bar R. V(21)(B)(2), and shall "*[i]mmediately report*" to disciplinary counsel *any* violation by Sarver of any condition of probation (emphasis added), Gov.Bar R. V(21)(B)(3). The written reports must be filed "at least quarterly or as otherwise determined" by disciplinary counsel. Gov.Bar R. V(21)(B)(2).

{¶ 46} Further, while on probation, Sarver must (1) have a personal meeting with the monitoring attorney or attorneys *at least once a month* during the first year and at least quarterly thereafter, unless required by the monitoring attorney or attorneys to have *more frequent* meetings; (2) provide the monitoring attorney or attorneys with a written release or waiver so that Sarver's compliance with the conditions concerning medical, psychological, or other treatment and his

attendance at self-help programs may be verified; and (3) *cooperate fully* with the efforts of the monitoring attorney or attorneys. Gov.Bar R. V(21)(C). Significantly, Sarver's probation may be terminated only with this court's approval, *see* Gov.Bar R. V(21)(D), and disciplinary counsel must *immediately* investigate "*any report* of a violation of the conditions of probation" by Sarver and must move to revoke his probation if warranted (emphasis added), Gov.Bar R. V(21)(E).

{¶ 47} These additional requirements will protect the public far more effectively than the sanction originally recommended by the board, as Sarver will be forced to be in regular and repeated contact with both the monitoring attorney or attorneys and OLAP. The written release or waiver that Sarver signs will provide the monitoring attorney or attorneys access to Sarver's medical and mental-health information—a significant intrusion into Sarver's private life—to ensure that he is in compliance with the conditions of his probation. Sarver must also abide by the significant obligations placed on him by his contract with OLAP. Moreover, Sarver has the proverbial "sword of Damocles" of more time without his license "hanging over his head" if he violates any ethical duty or any of the conditions during the suspension period. In other words, this sanction will keep Sarver, in colloquial terms, "on a short leash" once he is able to return to practice. Indeed, these additional conditions on the stay of Sarver's suspension will better help to protect the public.

## C. Conclusion

{¶ 48} While I agree with much of the majority opinion and agree that the significant conditions attached to Sarver's suspension, specifically probation, will help protect the public more effectively than the board's previously recommended discipline-by-consent agreement, I believe that a longer actual suspension of Sarver's Ohio law license is warranted. Therefore, I concur in part and dissent in part.

**{¶ 49}** I hope that in the future, this court will more often utilize probation, as was done in this case, as a means of protecting the citizens of Ohio from attorney misconduct.

O'CONNOR, C.J., and DEGENARO, J., concur in the foregoing opinion.

_____

Scott J. Drexel, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Jason Allan Sarver, pro se.

_____