[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Akron Bar Assn. v. Fortado,* Slip Opinion No. 2020-Ohio-517.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-517

AKRON BAR ASSOCIATION *v*. FORTADO.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Akron Bar Assn. v. Fortado,* Slip Opinion No. 2020-Ohio-517.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, namely, engaging in sexual activity with a client in absence of preexisting consensual sexual relationship—One-year suspension, fully stayed on condition.*

(No. 2019-0805—Submitted September 10, 2019—Decided February 18, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-061.

_____

**Per Curiam.**

{¶ 1} Respondent, Matthew Fortado, of Akron, Ohio, Attorney Registration No. 0010597, was admitted to the practice of law in Ohio in 1977. On February 28, 1996, we suspended him from the practice of law for two years for engaging in conduct that adversely reflected on his fitness to practice law and failing to

cooperate in the ensuing disciplinary investigation. *Disciplinary Counsel v. Fortado*, 74 Ohio St.3d 604, 660 N.E.2d 1154 (1996).

{¶ 2} In a November 29, 2018 complaint, relator, Akron Bar Association, alleged that Fortado violated Prof.Cond.R. 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed prior to the client-lawyer relationship) by commencing an intimate sexual relationship with a client during his legal representation.

{¶ 3} In a consent-to-discipline agreement filed in March 2019, Fortado admitted the charged misconduct and the parties agreed that the appropriate sanction for that misconduct is a conditionally stayed one-year suspension. However, the panel of the Board of Professional Conduct assigned to hear the case rejected the agreement, and the matter proceeded to a hearing. The parties submitted stipulations that were nearly identical to those of their rejected consent-to-discipline agreement and once again stipulated that the appropriate sanction for Fortado's misconduct is a conditionally stayed one-year suspension.

{¶ 4} After considering the parties' stipulations, seven stipulated exhibits, the testimony of Fortado and two character witnesses, and our precedent, the panel recommended that Fortado be suspended from the practice of law for one year with six months stayed on the condition that he engage in no further misconduct. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. Fortado objected and argues that the board erred in rejecting the parties' consent-to-discipline agreement and in recommending that this court impose a one-year suspension with six months conditionally stayed.

{¶ 5} Although we find that the panel had the discretion to reject the consent-to-discipline agreement and set the matter for a hearing, we sustain Fortado's objection to the recommended sanction and suspend him from the practice of law for one year, fully stayed on the condition that he engage in no further misconduct.

**Misconduct**

**{¶ 6}** In February 2011, M.S. retained Fortado to represent her in a civil matter. Approximately six months later, Fortado commenced an intimate sexual relationship with M.S. Fortado's legal representation of M.S. concluded in February 2012, with the settlement and dismissal of the action filed against M.S. After their intimate relationship concluded in the fall of 2014, Fortado represented M.S. in two other civil matters. Their relationship remained friendly until 2016, when M.S. discharged Fortado as her attorney in a personal-injury case. Fortado testified that M.S. initiated the intimate relationship by making repeated friendly overtures toward him and that he truly cared—and continues to care—for her. But he also admitted without qualification that it was wrong for him to have entered into the intimate relationship while he represented M.S.

**{¶ 7}** The parties stipulated, the board found, and we agree that Fortado's conduct violated Prof.Cond.R. 1.8(j).

**Sanction**

**{¶ 8}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 9}** The parties stipulated and the board found that just one aggravating factor is present—Fortado has previously been disciplined for misconduct that bears no relation to the conduct at issue in this case. *See* Gov.Bar R. V(13)(B)(1).

**{¶ 10}** In mitigation, the parties and the board agreed that Fortado had not acted with a dishonest or selfish motive and that he has acknowledged his wrongdoing and fully cooperated in the resulting disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(2) and (4). Fortado also presented 11 letters from attorneys, friends, and current and former judges who attested to his competence as an attorney and his favorable reputation in the community. Judge Elinore Marsh

Stormer and former judge Michael T. Callahan both testified at the panel hearing that they had known Fortado for many years, both personally and professionally, and that they were aware of the facts at issue in his current and past disciplinary proceedings. Judge Stormer described Fortado as "an excellent attorney" and explained that she appoints him to represent vulnerable parties in proceedings before the Summit County Probate Court. Callahan testified that Fortado's reputation for truthfulness and honesty is "beyond reproach."

{¶ 11} In determining the appropriate sanction for Fortado's misconduct, the board considered 11 cases in which we imposed sanctions, ranging from conditionally stayed six-month suspensions to partially stayed two-year suspensions, on attorneys for violations of Prof.Cond.R. 1.8(j). *See, e.g.*, *Cleveland Metro. Bar Assn. v. Sleibi*, 144 Ohio St.3d 257, 2015-Ohio-2724, 42 N.E.3d 699 (imposing a two-year suspension, with six months stayed on conditions, on an attorney who engaged in sexual activity with four clients and sent lewd and sexually explicit text messages to at least three of them); *Disciplinary Counsel v. Hubbell*, 144 Ohio St.3d 334, 2015-Ohio-3426, 43 N.E.3d 397 (imposing a fully stayed six-month suspension on an attorney who attempted to initiate a romantic relationship with a client he was representing pro bono in a custody dispute). In three of those cases, we imposed one-year suspensions with six months conditionally stayed. *See Disciplinary Counsel v. Mason*, 156 Ohio St.3d 398, 2019-Ohio-1269, 128 N.E.3d 183; *Disciplinary Counsel v. Leon*, 155 Ohio St.3d 582, 2018-Ohio-5090, 122 N.E.3d 1242; *Disciplinary Counsel v. Bartels*, 151 Ohio St.3d 144, 2016-Ohio-3333, 87 N.E.3d 155.

{¶ 12} Finding that this court has "fairly consistently imposed an actual suspension on attorneys who engage in sexual relations with a client," the board recommends that we suspend Fortado from the practice of law for one year with six months stayed on the condition that he engage in no further misconduct.

4

**Fortado's Objection**

{¶ 13} In a single objection, Fortado argues that the board erred by rejecting the parties' consent-to-discipline agreement and by recommending that we suspend him from the practice of law for one year with just six months stayed on conditions.

{¶ 14} Fortado's argument that the panel erred to his prejudice by rejecting the parties' consent-to-discipline agreement is without merit. Gov.Bar R. V(16)(A) permits the relator in an attorney-discipline case "to enter into a written agreement wherein the respondent admits to alleged misconduct and the relator and respondent agree upon a sanction, other than an indefinite suspension or disbarment, to be imposed for that misconduct." But Gov.Bar R. V(16)(B) and (C) also grant the hearing panel and the board discretion either to recommend acceptance of that agreement or to reject it and set the matter for a hearing—which is precisely what the panel did here.

{¶ 15} It is true that Gov.Bar R. V(16)(D) provides that a consent-to-discipline agreement that has been rejected by the panel, the board, or this court "shall not be admissible or otherwise used in subsequent disciplinary proceedings." Yet nothing prevented the parties here from reaffirming their stipulations and continuing to advocate in favor of a conditionally stayed one-year suspension after the panel rejected their consent-to-discipline agreement or after the board recommended that we impose a harsher sanction. We therefore overrule Fortado's objection as it relates to the panel's rejection of the consent-to-discipline agreement.

{¶ 16} Fortado also argues that the board's recommendation that he serve actual time out from the practice of law is inconsistent with our precedent. Specifically, he argues that this case is factually distinguishable from *Mason*, 156 Ohio St.3d 398, 2019-Ohio-1269, 128 N.E.3d 183, and most comparable to cases in which this court imposed fully stayed suspensions on attorneys who engaged in an improper sexual relationship with a client. Relator agrees and asserts that we

have typically required attorneys who engaged in inappropriate sexual relationships with their clients to serve actual time away from the practice of law only when they engaged in additional rule violations or when other aggravating factors that do not exist here were present.

{¶ 17} Like Fortado, Mason engaged in a sexual relationship with a client during his representation. But Mason also had entered an *Alford* plea to a misdemeanor charge of engaging in sexual activity for hire and admitted that his conduct adversely reflected on his fitness to practice law.[1] *Mason* at ¶ 6, 8. Despite strong evidence of his guilt, Mason had failed to acknowledge the wrongful nature of his criminal conduct, attempted to minimize his misconduct by blaming others, and expressed remorse only for his own embarrassment and public humiliation. *Id.* at ¶ 9. Although Mason had no prior disciplinary record, had exhibited a cooperative attitude toward the disciplinary proceedings, and had submitted evidence of his good character and reputation, he also had acted with a selfish or dishonest motive, committed multiple offenses, and caused harm to a vulnerable client. Fortado, in contrast, has accepted full responsibility and acknowledged the wrongfulness of his conduct. Moreover, there is no evidence that Fortado has committed multiple offenses, that he has acted with a selfish or dishonest motive, or that his intimate relationship with M.S. caused her any harm. On the contrary, Fortado testified that their committed relationship outlasted his initial legal representation of her by approximately two and a half years and developed into a friendship that continued for another two years.

{¶ 18} Like *Mason*, the remaining cases cited by the board warranted the imposition of actual time away from the practice of law because they involved either acts of misconduct in addition to soliciting or engaging in sexual activity with

---

1. An *Alford* plea is "[a] guilty plea that a defendant enters as part of a plea bargain without admitting guilt." *Black's Law Dictionary* 86 (10th Ed.2014); *see North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

a client or other significant aggravating factors that are not present here. For example, in *Leon*, 155 Ohio St.3d 582, 2018-Ohio-5090, 122 N.E.3d 1242, the attorney accepted a retainer and filing fee from a husband and wife and failed to deposit those funds into his client trust account, failed to perform the contracted legal work, failed to refund their unearned fees, and engaged in a sexual relationship with the wife during his legal representation of the couple. We suspended him from the practice of law for one year with six months stayed on conditions. In *Bartels*, 151 Ohio St.3d 144, 2016-Ohio-3333, 87 N.E.3d 155, we imposed the same sanction on an attorney who exchanged multiple sexually oriented text messages with a client—after having been publicly reprimanded for engaging in a sexual relationship with another client—and failed to appreciate the wrongfulness of her conduct.

{¶ 19} On the other hand, we have occasionally imposed fully stayed suspensions on attorneys who engaged in misconduct that, in some respects, was more egregious than Fortado's conduct here. For example, in *Cleveland Metro. Bar Assn. v. Paris*, 148 Ohio St.3d 55, 2016-Ohio-5581, 68 N.E.3d 775, we disciplined an attorney who not only had made unwelcome sexual advances toward a client but also had failed to attend the client's sentencing hearing, *id.* at ¶ 7. Although we found that Paris had acted with a selfish motive, engaged in multiple offenses, and harmed a vulnerable client, we imposed a fully stayed six-month suspension for his misconduct.

{¶ 20} In *Disciplinary Counsel v. Siewert*, 130 Ohio St.3d 402, 2011-Ohio-5935, 958 N.E.2d 946, we also imposed a fully stayed six-month suspension on an attorney who engaged in an improper sexual relationship with a chemically dependent client who had retained him to represent her in her divorce, a domestic-violence matter, and a related civil-protection-order proceeding. Siewert stipulated that his misconduct adversely reflected on his fitness to practice law and materially limited his ability to represent his client. *Id.* at ¶ 5. Like Fortado, he had a prior

unrelated disciplinary record but had fully cooperated in the proceedings and presented evidence of his good character and reputation.

{¶ 21} Based on the unique facts of this case—including the absence of any evidence of coercion, Fortado's acceptance of responsibility for his wrongdoing, his full cooperation in these proceedings, and his strong character and reputation evidence—and having carefully considered the sanctions we have imposed in other cases involving similar misconduct, we sustain Fortado's objection to the board's recommended sanction. Moreover, we agree that a conditionally stayed one-year suspension is the appropriate sanction for Fortado's misconduct.

{¶ 22} Accordingly, Matthew Fortado is suspended from the practice of law for one year, fully stayed on the condition that he engage in no further misconduct. If Fortado fails to comply with the condition of the stay, the stay will be lifted and he will serve the entire one-year suspension. Costs are taxed to Fortado.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by FISCHER, J.

_____

**KENNEDY, J., dissenting.**

{¶ 23} Because it is per se professional misconduct when an attorney abuses the attorney-client relationship by commencing a sexual relationship with a client and our caselaw establishes that an actual suspension from the practice of law is the appropriate sanction for that misconduct, I would adopt the recommendation of the Board of Professional Conduct and suspend respondent, Matthew Fortado, from the practice of law for one year, with six months stayed on the condition that he engage in no further misconduct. Therefore, I dissent.

{¶ 24} Prof.Cond.R. 1.8(j) prohibits a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship between them

predates the client-lawyer relationship. "In the absence of a preexisting, consensual sexual relationship, seeking or having sex with a client is a per se violation. The fact that a client appears to have consented does not mitigate the attorney's misconduct or provide a defense against a violation." *Disciplinary Counsel v. Sarver*, 155 Ohio St.3d 100, 2018-Ohio-4717, 119 N.E.3d 405, ¶ 16. As Comment 17 to Prof.Cond.R. 1.8(j) explains, "this rule prohibits the lawyer from engaging in sexual activity with a client *regardless of whether the relationship is consensual and regardless of the absence of prejudice to the client*, unless the sexual relationship predates the client-lawyer relationship." (Emphasis added.) *Compare* Prof.Cond.R. 1.7 (allowing a client to consent to representation of another client that will be directly adverse to the client in certain circumstances); Prof.Cond.R. 1.8(a) (allowing a client to consent to an attorney's transacting business with the client when certain conditions are met). And Gov.Bar R. V(13)(C) does not identify the client's consent as a mitigating factor that may be considered in favor of a less severe sanction.

{¶ 25} A client's apparent consent and the absence of overt coercion are both irrelevant facts because " 'the client's reliance on the ability of her counsel in a crisis situation has the effect of putting the lawyer in a position of dominance and the client in a position of dependence and vulnerability." *Sarver* at ¶ 24, quoting *Disciplinary Counsel v. Booher*, 75 Ohio St.3d 509, 510, 664 N.E.2d 522 (1996). "This power imbalance ' "enables the lawyer to dominate and take unfair advantage" ' of the client." *Id.*, quoting *Iowa Supreme Court Bd. of Professional Ethics & Conduct v. Hill*, 540 N.W.2d 43, 44 (Iowa 1995), quoting former Iowa Code of Professional Responsibility EC 5-25. The power imbalance also "renders it impossible for the vulnerable layperson to be considered 'consenting.' " *Hill* at 44.

{¶ 26} Nor is a lack of any apparent prejudice to the client relevant. We have recognized that " 'a sexual relationship between lawyer and client during the

course of the professional relationship is inherently and insidiously harmful.' * * * The client may be psychologically and emotionally harmed by an exploitative sexual relationship regardless of the outcome of the legal case." *Sarver* at ¶ 28, quoting *People v. Boyer*, 934 P.2d 1361, 1363 (Colo.1997). And "[t]he abuse of the attorney-client relationship not only harms the dignity of the client, whose body and trust in her lawyer have been violated, but it also impugns the legal system as a whole" when a client turns to the legal profession for help protecting or enforcing her rights only to be exploited for the lawyer's sexual gratification. *Id*. at ¶ 29.

**{¶ 27}** Therefore, "the professional-conduct rules do not indicate that a lesser sanction should be imposed on the attorney when the relationship 'appears' to be consensual or when the client's case does not seem to have been prejudiced." *Id.*, 155 Ohio St.3d 100, 2018-Ohio-4717, 119 N.E.3d 405, at ¶ 30. Rather, "[w]e have admonished lawyers and sanctioned them with an actual suspension from the practice of law for engaging in sexual conduct with clients with whom they had no sexual relationship prior to the representation." *Id.* at ¶ 17.

**{¶ 28}** In this case, the record contains the bare stipulations that "during the course of the representation, [Fortado and the client] began an intimate sexual relationship" and that "[Fortado] acknowledges that it was wrong to begin a consensual sexual relationship while representing a client." It also includes Fortado's testimony that he had a romantic, monogamous, consensual sexual relationship with the client. But there is little to nothing in the record that corroborates his side of the story.

**{¶ 29}** This is especially problematic given Fortado's admissions that at the time he commenced the sexual relationship with the client, "she was going through a difficult divorce and so she was vulnerable." He knew that she had been denied visitation with her children because she suffered from mental-health issues. And in his representation of the client, Fortado learned other intimate details about the client's life suggesting that she may have just left a sexually exploitative

relationship with the plaintiff in the lawsuit Fortado was defending her against— she had worked as the plaintiff's housekeeper, she had had a sexual relationship with him, and the plaintiff had given her loans and access to his credit card. The sexual relationship had become an issue in the client's divorce proceeding during that time, and she had asked the plaintiff to falsely deny in that proceeding that he had had sex with her. And the client had filed a counterclaim against the plaintiff, alleging that he had sexually assaulted her.

{¶ 30} Fortado also had recognized that the client "was in financial distress at that time," and he therefore waived the "substantial fees" she owed him and persuaded another attorney to agree to waive her "substantial fees" as well. He testified that he had "financed her to travel to Kentucky where the kids were, [given] her money for their Christmas presents, [and given] her money for their birthday presents." He also admitted that he had given her "financial help" in connection with her health problems during the representation and that he had taken her on vacations. Their sexual relationship ended after he gave the client money to bring her mother to Ohio from North Carolina; although Fortado had expected to spend time with both women, the client did not contact him during the visit but instead called afterwards to ask for more money.

{¶ 31} The record contains few specific details about the client such as her age, education, and sophistication with the law, how the sexual relationship began and ended, or whether she agreed with Fortado's characterization of the facts. She was not called to testify, and not even the grievance appears in the record. But from Fortado's own admissions, it is apparent that he commenced a sexual relationship with the client at a time when she was financially, emotionally, and psychologically vulnerable and dependent on him. He held a superior position of power and trust, and he therefore abused that power and trust for his own sexual gratification when he commenced the sexual relationship. Not only that, we have explained that an attorney's giving a client financial support and free legal representation during an

improper sexual relationship "in effect paid [the client] to continue their relationship." *Disciplinary Counsel v. Krieger*, 108 Ohio St.3d 319, 2006-Ohio-1062, 843 N.E.2d 765, ¶ 33.

{¶ **32**} The inherently unequal power dynamic between Fortado and his client is apparent on the record, but the majority nonetheless credits his testimony that he and the client shared a "committed relationship" without ever having heard the client's side of the story. And although the majority points to the lack of evidence of coercion and harm to the client, the existence of consent and the lack of harm do not mitigate Fortado's misconduct. *See Sarver*, 155 Ohio St.3d 100, 2018-Ohio-4717, 119 N.E.3d 405, at ¶ 16; Prof.Cond.R. 1.8(j), Comment 17. Rather, Prof.Cond.R. 1.8(j) is an absolute bar against an attorney commencing a sexual relationship with a client. And in any case, there is little in the record corroborating Fortado's characterization of the relationship as committed and consensual during the representation. As we explained in *Disciplinary Counsel v. Bartels*, " 'the burden is on the lawyer to ensure that all attorney-client dealings remain on a professional level.' " 151 Ohio St.3d 144, 2016-Ohio-3333, 87 N.E.3d 155, ¶ 15, quoting *Booher*, 75 Ohio St.3d at 510, 664 N.E.2d 522. Fortado failed to carry that burden.

{¶ **33**} I see little justification in this record to depart from our caselaw holding that an actual suspension from the practice of law is the appropriate sanction for a violation of Prof.Cond.R. 1.8(j). *See Sarver* at ¶ 17-22 (citing cases). For this reason, I would impose the board's recommended sanction and suspend Fortado for one year, with six months stayed on conditions.

{¶ **34**} Therefore, I dissent.

FISCHER, J., concurs in the foregoing opinion.

---

Sara E. Strattan; and Wayne M. Rice, Bar Counsel, for relator.

McNamara, Demczyk Co., L.P.A., and Sidney N. Freeman, for respondent.

January Term, 2020

_____